[No. A017761. First Dist., Div. Three. July 26, 1984.]

DENNIS A. LUCCHESI, Plaintiff and Appellant, v.
GIANNINI & UNIACK et al., Defendants and Respondents.

COUNSEL

Howard R. Weber, Charles H. Richards and Richards & Weber for Plaintiff and Appellant.

Peter B. Brekhus, Scott A. Williams, Brekhus & Williams, Kenneth J. Branch and Duman & Kaitz for Defendants and Respondents.

OPINION

ANDERSON, J.—Plaintiff Dennis A. Lucchesi (Lucchesi) brought an action for malicious prosecution[1] against Edwin and Virginia Ela (the Elas) and their attorneys, Thomas Uniack, David T. Giannini, and the law firm of Giannini & Uniack. (Uniack, Giannini, and their law firm will be identified collectively as attorneys.) The trial court granted separate motions for summary judgment brought by the Elas and their attorneys.[2] Plaintiff appeals.

In their motions for summary judgment, the Elas and their attorneys each argued that the trial court rulings denying defense motions for summary judgment and for nonsuit in the initial proceedings collaterally established, as a matter of law, that probable cause existed for those proceedings, notwithstanding the fact that defendant Lucchesi ultimately prevailed. Further, the Elas claimed as a separate defense that they were simply clients who relied in good faith upon the advice of their attorneys in initiating the Marin County civil proceedings against appellant. We disagree with those positions and hold that the trial court erred in granting respondents' motions for summary judgment.

## I. STANDARD OF REVIEW

■ A motion for summary judgment must be granted if all the affidavits, declarations, and other supporting papers show that there is no triable issue

---

[1] "Where a cause of action founded upon a civil proceeding is recognized, it usually is called malicious prosecution, although 'prosecution' is something of a misnomer." (Prosser, Torts (4th ed. 1971) § 120, p. 853.) Prosser uses the term "wrongful civil proceedings" to describe the tort. (*Ibid.*, see also Rest.2d Torts, § 674 ("wrongful use of civil proceedings").) We believe the term used by Witkin, the "malicious institution of a civil proceeding," to be most descriptive. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 255, p. 2531.) Except where the context of our discussion makes use of the traditional misnomer more convenient, we will attempt to use the latter terminology.

[2] Although the court's final response to each of the defendant's motions was an *order* and not a judgment signed and entered by the court, we construe such orders, as do the parties, as appealable final judgments. (*Stork* v. *State of California* (1976) 62 Cal.App.3d 465, 467-468 [133 Cal.Rptr. 207].)

as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc.,[3] § 437c, subd. (c).) ■ The aim of the summary judgment procedure is to discover, through the supporting papers, whether the parties possess evidence requiring the weighing procedures of a trial. (*McKinney* v. *County of Santa Clara* (1980) 110 Cal.App.3d 787, 793-794 [168 Cal.Rptr. 89].)

■ In examining the sufficiency of the declarations and other supporting papers filed in connection with the motion, we consider the respondents' papers strictly to determine if they establish their right to judgment by conclusively negating a necessary element of appellants' cause of action, and we construe appellants' declarations liberally to determine if appellants have established the existence of triable issues of fact. (*Tool Research & Engineering Corp.* v. *Henigson* (1975) 46 Cal.App.3d 675, 678 [120 Cal.Rptr. 291]; see also *McKinney* v. *County of Santa Clara, supra,* 110 Cal.App.3d 787, 794.) ■ In a malicious institution proceeding, we consider depositions, documents, and records before the trial court at the hearing on the motion in the same manner. (*Tool Research & Engineering Corp.* v. *Henigson, supra,* at p. 679; see § 437c, subd. (b).) ■ Doubts as to the propriety of granting the motion are resolved against the moving party. (*McKinney* v. *County of Santa Clara, supra,* at p. 794.) ■ Finally, the moving party has the burden of proving the absence of any triable issue of fact even though the burden of proof as to the particular issue may rest with the resisting party at the trial. (*Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38].)

With those principles in mind, we examine the record.

## II. PROCEDURAL BACKGROUND

### A. *Events Preceding Marin County Action.*

In early 1972 the Elas first came to Lucchesi who was Chief Loan Officer at CIT Financial Services (hereafter CIT). During that year and the next, Lucchesi approved some small loans for the Elas and granted extensions to the Elas on their repayment schedule. A personal acquaintanceship developed. When a requested loan was denied by CIT in October 1973, Lucchesi stated that Mr. Ela called him at his home and indicated that Ela and his wife were "desperate for money." According to Lucchesi, Ela urged him to personally buy their San Rafael residence. The Elas would then lease the property back with a right to repurchase it at current market value when able to do so.

---

[3]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

On October 30, 1973, the Elas signed a grant deed, absolute on its face, granting their residential property to Lucchesi. A few days later, on November 6, 1973, the parties entered into a lease for a period of one year, automatically renewable annually, with the right to repurchase provided for therein. Lucchesi understood the execution of the grant deed to be an absolute sale of the residence to him, and declared his belief that the Elas shared that understanding.[4]

Regarding Attorney Uniack, Lucchesi declared that during the summer of 1973, in a matter unrelated to this case, he and Uniack had "engaged in hostile conversation which resulted in the exchange of verbal insults and a minor altercation." According to Lucchesi, Uniack vowed that he would "seek and gain revenge" against Lucchesi and implied he would do so through his practice of law. This animosity continued over a period of time.

In June 1975, Uniack advised Lucchesi he was representing the Elas with regard to the residential property and threatened that if ownership was not restored to the Elas, Uniack would initiate a lawsuit that would cost Lucchesi his job with CIT. Asserting the 1973 transactions were unfair to the Elas, Uniack eventually presented Lucchesi with a draft of a proposed lease option agreement intended to supersede the November 1973 lease agreement. Lucchesi retained an attorney. After extensive negotiations,[5] Lucchesi signed a new lease option agreement with the Elas on November 15, 1975. In doing so, Lucchesi declared he gave up substantial rights regarding the property, that he would not have entered into the lease but for Uniack's threats, and that in signing the new lease, Lucchesi, the Elas, and their attorneys intended and understood it would settle all issues of ownership and all other rights and interest concerning the property.[6] Also in the lease was an option to purchase the property within 30 days prior to the termination of the lease, with that option to expire by November 15, 1976. The Elas did not exercise this option, nor did they pay rent during several months of the lease.

---

[4]The trial judge in the Marin County action, the Honorable Louis H. Burke, later so found.

[5]Justice Burke would later find that whatever confidential relationship may have existed between Lucchesi and the Elas as lender and borrower at an earlier date, this had ended when the Elas retained Mr. Uniack. The parties were dealing at arms length during these negotiations.

[6]Paragraph 24 of the November 15, 1975, "Lease Option Agreement" provided: "Lessee and Lessor agree that this instrument contains the sole and only agreement between them concerning the demised premises and correctly sets forth their rights and obligations to each other concerning the demised premises as of the date of this lease. Any agreement or representation respecting the demised premises or the duties of either lessor or lessee in relation thereto not expressly set forth in this instrument is null and void."

## B. *The Marin County Action (No. 82204).*

On November 12, 1976 (three days before expiration of the 1975 lease option agreement), defendants Elas, represented by defendant Giannini of the defendant law firm Giannini & Uniack, filed a "Complaint for Cancellation of Deed and to Quiet Title Plus Punitive Damages" in Marin County against Lucchesi, alleging that Lucchesi had defrauded and exerted undue influence on the Elas and that Lucchesi had violated several federal and state laws in entering into the original 1973 agreement. They sought cancellation of the grant deed and damages. Although Giannini's partner, Uniack, had prepared the 1975 lease option agreement, this lease was not mentioned in the complaint.

On July 12, 1977, Lucchesi moved for summary judgment in the Marin County proceeding. This was denied. On September 21, 1977, Lucchesi's codefendant, CIT, also moved for summary judgment. This motion, too, was denied. On November 15-16, 1977, a court trial was held before the Honorable Louis H. Burke, sitting as a superior court judge. After the plaintiffs, Mr. and Mrs. Ela, rested their case, Lucchesi's attorney moved for a nonsuit.[7] This motion was also denied.

Although he lost the battles, Lucchesi won the war, in that he prevailed at the conclusion of the trial. The court ordered that judgment be entered for Lucchesi. Further, on a cross-complaint by Lucchesi, the court ordered the property in question to be returned to Lucchesi.

## C. *The San Francisco Action (No. 749530).*

On February 16, 1979, Lucchesi filed a complaint in San Francisco Superior Court initiating these proceedings. As amended, Lucchesi alleged that the Elas and their attorneys had maliciously initiated the Marin County action.[8] Lucchesi alleged he lost his job with CIT, suffered emotional distress, and incurred substantial attorney fees.

On December 7, 1981, the attorneys moved for summary judgment on the cause of action relating to them. They successfully argued that probable

---

[7]Technically, as this was a court trial, the defendants should have moved for judgment pursuant to section 631.8 instead of nonsuit, which is made after presentation of the evidence in a jury trial. (§ 581c.) This defect, however, is often "one of form and not of substance" (*Wilson* v. *County of Los Angeles* (1971) 21 Cal.App.3d 308, 312 [98 Cal.Rptr. 525], disapproved on another point in *Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 592 [156 Cal.Rptr. 198, 595 P.2d 975]; 4 Witkin, Cal. Procedure (2d ed., Supp. 1983) Trial, § 358, p. 241), so, for the sake of convenience, we will adopt the designation used by the parties and the trial courts below.

[8]There were also other allegations and parties, not relevant to this appeal.

cause for instituting the Marin County action was established as a matter of law when the defense motions for summary judgment and for nonsuit during those proceedings were denied, notwithstanding the fact defendant Lucchesi ultimately prevailed.

The Elas in their motion for a summary judgment, urged the same grounds as had been advanced by their attorneys, and additionally argued that they, as clients, had probable cause because they had relied in good faith on the advice of their counsel in bringing the Marin County suit. Their motion was likewise granted.

### III. MALICIOUS INSTITUTION OF A CIVIL PROCEEDING

A. *Introduction.*

■ The action for malicious prosecution is a recognition of the right of an individual to be free from unjustifiable litigation. It had its origin as a remedy for unjustifiable criminal proceedings and in most states, including California, it has been extended into the field of malicious institution of civil proceedings. ■ To recover, the plaintiff must prove: (1) that the defendant initiated a criminal or civil proceeding without probable cause, (2) that the proceeding has terminated in the plaintiff's favor, and (3) that the defendant acted maliciously in instituting the proceeding. (*Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]; *Cowles* v. *Carter* (1981) 115 Cal.App.3d 350, 354 [171 Cal.Rptr. 269].)

■ With respect to the meaning of probable cause, probable cause does not mean "legal cause" to bring an action; otherwise, every plaintiff who loses a case would be liable in an action for malicious institution. Instead, probable cause means an honest suspicion or belief on the part of the plaintiff, founded on facts sufficiently strong to warrant a reasonable person in believing that the charge is true. (*Black* v. *Knight* (1919) 44 Cal.App. 756, 769 [187 P. 89].) Further, reasonable belief is no defense if it is not in good faith. Even though the instigator had knowledge of facts sufficient to cause a reasonable person to believe the other party legally accountable, he is not protected if he did not actually hold such belief. (See *Franzen* v. *Shenk* (1923) 192 Cal. 572, 578 [221 P. 932].)

B. *The denial of motions for summary judgment and nonsuit in the prior proceeding is not conclusive proof of probable cause for instituting those proceedings so as to bar the instant action.*

In support of their contention that probable cause was established by the denial of the motions for summary judgment and nonsuit in the prior Marin

proceedings, respondents cite a series of cases in which the plaintiff in the earlier action obtained judgment after trial, but then lost on appeal. The courts have consistently held that, absent fraud, plaintiff's initial victory in the underlying action amounted to a showing that probable cause existed to bring that action in the first place. But as appellant points out, those cases are distinguishable from this in that the initial victory of the plaintiff in the underlying action followed a full adversary hearing before a trier of fact whose determination reached the merits of that action.

For example, in *Black* v. *Knight, supra,* 44 Cal.App. 756, the plaintiff in the prior action initially won a judgment for unlawful detainer following trial, but that judgment was reversed on appeal. The initial victory established probable cause to bring the action, even though later reversed. (*Id.,* at p. 770.) On similar facts, *Black* v. *Knight* was followed in *Gause* v. *McClelland* (1951) 102 Cal.App.2d 762, 764-765 [228 P.2d 91]. (See also *Bealmear* v. *So. Cal. Edison Co.* (1943) 22 Cal.2d 337 [139 P.2d 20] [jury conviction reversed on appeal; second trial dismissed for insufficiency; probable cause existed for first trial]; *Fairchild* v. *Adams* (1959) 170 Cal.App.2d 10 [338 P.2d 191] [jury verdict for complainant in will contest; reversed on appeal].) None of the cases relied upon by respondents involved the issue presented here—whether a presumption of probable cause arises when the defendant in the prior action (now the malicious prosecution plaintiff), loses on "interim rulings" such as motions for summary judgment or for nonsuit.

An analogous case is *Cowles* v. *Carter, supra,* 115 Cal.App.3d 350.[9] In that case, the trial court *denied a defense motion* for nonsuit, and the jury then returned its *verdict for the plaintiff.* Thereafter defendant Cowles moved for judgment notwithstanding the verdict, and the court granted his motion, reversing the jury's determination. Cowles then sued Carter for malicious institution of civil proceedings. When Carter's demurrer to the complaint was sustained, Cowles appealed. Looking to the denial of the defense motion for nonsuit and the jury's initial verdict for the plaintiff, the Court of Appeal held that "the *dual action of the court and the jury* is a sufficient determination of probable cause to prevent the defendant from instituting malicious prosecution proceedings even though such verdict be overthrown by the trial judge or on appeal." (*Cowles* v. *Carter, supra,* at p. 359, italics added.) Apparently to that court, the denial of the nonsuit, in itself, would not be sufficient to establish probable cause.

[9]A closer case factually is *Tool Research & Engineering Corp.* v. *Henigson, supra,* 46 Cal.App.3d 675, cited by respondents on another point. In that case, the first court denied defense motions to dismiss and for summary judgment, after which a jury found in defendant's favor. (*Id.,* at p. 681.) Although the defendant later sued for malicious prosecution, apparently no contention was made that denial of these motions had any effect on the later proceedings.

The critical question in determining probable cause, said the *Cowles'* court, is whether a trier of fact, after a fair adversary hearing, reached a determination on the merits against the defendant in the prior proceeding. (*Id.,* at p. 358.)

As the *Cowles* court correctly notes, in criminal proceedings, not even a holding order and denial of a motion pursuant to section 995 of the Penal Code are individually or collectively such a determination on the merits as to bar the acquitted defendant from pursuing his civil remedy for malicious prosecution. (*Id.,* at pp. 358-359, citing *De La Riva* v. *Owl Drug Co.* (1967) 253 Cal.App.2d 593, 597-598 [61 Cal.Rptr. 291].)

We believe that even less significance attaches to the *denial* of a motion for summary judgment or for nonsuit in a civil proceeding. A motion for summary judgment may be denied for any of several reasons: (1) there may be a triable issue as to a material fact; (2) the supporting affidavits may be insufficient; (3) the only proof as to a material fact may be an affidavit or declaration by the sole witness to the fact; or (4) a material fact may involve an individual's state of mind and that fact is sought to be established solely by that individual's affirmation thereof. (See § 437c, subds. (b), (c), (e); 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 180, 184-186.) Even when the denial is based on the first ground that a material issue of fact does exist, this procedure still falls short of a hearing on the merits.

Similarly, the *denial* of a motion for nonsuit (in contrast to the granting of such motion) is not a determination on the merits.[10] A motion for nonsuit is tantamount to a demurrer to the evidence in that it concedes the truth of the facts proved, but denies that they, as a matter of law, sustain the plaintiff's case. (See *Bush* v. *Wood* (1908) 8 Cal.App.647, 650-651 [97 P. 709].) A motion for nonsuit should not be granted if there is any substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. (See *Estate of Caspar* (1916) 172 Cal. 147, 150 [155 P. 631].) With such a minimal showing needed to defeat the motion, we hold the denial of a motion for nonsuit is insufficient, in itself, to conclusively establish probable cause to institute the prior civil proceedings.[11]

---

[10]The *granting* of a motion for nonsuit generally *does* operate as an adjudication on the merits. (§ 581c, subd. (c); see also § 631.8, subd. (c) [granting of motion for judgment is an adjudication on merits].)

[11]In *Cowles,* it was the "dual action" of the court's denial of the nonsuit motion and the initial jury verdict for plaintiff (even though later overturned), which established probable cause. (*Cowles* v. *Carter, supra,* 115 Cal.App.3d 350, 359.)

As neither the denial of the motion for summary judgment nor the denial of the motion for nonsuit was a determination on the merits against the defendant in the prior proceedings, those rulings did not establish, as a matter of law, that probable cause existed for the underlying lawsuit. We hold that the trial court erred in granting the separate motions for summary judgment in behalf of the Elas and their attorneys.

C. *Triable issues of fact remain regarding the Elas' good faith reliance on the advice of their counsel to file suit.*

 The Elas cited, as an additional theory in support of their motion for summary judgment, their good faith reliance upon their attorneys' advice to file and proceed to suit against Lucchesi.

 Probable cause may be established by the defendants in a malicious institution proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer. (*Citizens State Bank* v. *Hoffman* (1941) 44 Cal.App.2d 854, 857 [113 P.2d 221].) However, if the person initiating the suit acts in bad faith or withholds from counsel facts he knew or should have known would defeat a cause of action otherwise appearing from the information, that defense fails. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 53-54 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The burden of proving this affirmative defense is on the party seeking to benefit by it. (*Id.,* at p. 54.)

 The Elas' declarations reveal that triable issues as to material facts do exist such that their motion for summary judgment should have been denied. For example, Lucchesi maintains that he fully disclosed all relevant and material facts to the Elas during the 1973 transaction and that they in turn indicated by words and actions that they understood the nature of the transaction as being an absolute sale. The Elas maintain, on the other hand, that they understood they were entering only into a security transaction.

More significantly, Lucchesi stated that it was in July 1975, before the lease option agreement was negotiated, that Attorney Uniack made threats to him growing out of the 1973 transaction. Uniack, in a declaration prepared in behalf of the Elas, stated that he and his clients were unaware of the 1973 lease until July of 1976—*after* the November 15, 1975, lease option agreement had been prepared. At the very least, this indicates a triable issue as to a material fact. Worse, it may indicate that the Elas withheld from their attorney facts they knew or should have known might defeat their cause of action. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43,

53-54.) These factual issues should have been sufficient to deny the Elas' motion for summary judgment.

The trial court's orders that summary judgments be entered are reversed.

Scott, Acting P. J., and Barry-Deal, J., concurred.