[No. B125515. Second Dist., Div. Seven. Nov. 22, 1999.]

ALAN ROBERTS et al., Plaintiffs and Appellants, v.
SENTRY LIFE INSURANCE et al., Defendants and Respondents.

## COUNSEL

Simke Chodos, David Manning Chodos, Richard A. Fond and James Robertson Martin for Plaintiffs and Appellants.

Engstrom, Lipscomb & Lack and Paul W. Engstrom for Defendant and Respondent Sentry Life Insurance Company.

Dewey Ballantine and Richard J. Burdge, Jr., for Defendants and Respondents Alan M. Albright, Robert W. Fischer, Jr., Byron O. Smith, Alan Wayte and Gary A. York.

Tuttle & Taylor and Diann H. Kim for Defendant and Respondent John H. Brinsley.

Hinshaw & Culbertson, Ronald E. Mallen and Paul E. Vallone for Defendants and Respondents certain former Adams, Duque and Hazeltine partners.[1]

Lynn M. Aylward-Bingman for Defendant and Respondent Terrance L. Bingman.

Jerald R. Cochran, in pro. per., for Defendant and Respondent.

Bruce A. Beckman, in pro. per., for Defendant and Respondent.

---

[1]Certain former Adams, Duque and Hazeltine partners: David L. Bacon, C. Forrest Bannan, John A. Blue, David M. Bosko, Kimler G. Casteel, Shirley E. Curfman, Richard T. Davis, Jr., R. Stephen Doan, Richard C. Field, James H. Fleming, D. Peter Harvey, Richard Allen Horning, Blaine C. Janin, Rich Leslie Lawrence, Margaret Levy, Robert M. Mitchell, James J. Moak, Robert D. Phillips, Jr., Peter E. Romo, Jr., Catherine Hunt Ruddy, Charles D. Schoor, Daniel H. Slate, Jeffrey P. Smith, Paul M. Smith, Jeffrey Anne Tatum, James R. Willcox and Lonnie Woolveton.

Mitchell L. Lathrop, in pro. per., for Defendant and Respondent.

J. Joseph Connolly, in pro. per., for Defendant and Respondent.

Anna M. Martin for Defendant and Respondent Joseph M. Rimac.

Wilson B. Copes, in pro. per., for Defendant and Respondent.

Rex Heeseman, in pro.per., for Defendant and Respondent.

Frederick W. Lambert, in pro. per., for Defendant and Respondent.

Robert H. Roe, in pro. per., for Defendant and Respondent.

Sue J. Stott, in pro. per., for Defendant and Respondent.

Dale A. Welke, in pro. per., for Defendant and Respondent.

**OPINION**

**NEAL, J.—**

## SUMMARY

In an action alleging malicious prosecution of an earlier suit, evidence that the trial court in the earlier suit denied a defense summary judgment motion establishes that there was probable cause to bring the earlier suit.

## FACTS AND TRIAL COURT PROCEEDINGS

Appellants Alan Roberts, a doctor, and Alan Roberts M.D., Inc., Roberts's wholly owned personal corporation, were previously sued in federal court by respondent Sentry Life Insurance Company, represented by Adams, Duque & Hazeltine, a now defunct law firm whose partners also are respondents in this appeal. Sentry asserted both contract and tort claims, the latter for fraud and breach of the covenant of good faith and fair dealing.

After Roberts won the federal court suit, he brought this action in superior court claiming that respondents maliciously prosecuted their federal tort claims.

Respondents moved for summary judgment. The evidence submitted to the trial court is summarized as follows.

In 1978 Sentry insured Roberts under two group disability policies for American Medical Association members. The policies obliged Sentry to pay Roberts $3,000 per month when totally disabled, but this payment was to be reduced by 50 percent of compensation earned if Roberts returned to work.

Roberts became disabled in 1979 as a result of "severe situational stress" and started collecting $3,000 monthly. In August 1980 Roberts resumed work.

In September and October 1980 Roberts told Sentry that his corporation paid him salary, but he was presently receiving no salary because the corporation did not earn enough money to pay its expenses. Roberts's September 8, 1980, letter to Sentry said it would be "several months before there will be sufficient collections to meet the expenses of the office, let alone pay me a salary." On December 22, 1980, Roberts's accountant, Kalvin, wrote Sentry advising that Roberts was paid $19,205 in salary on October 30, 1980, for work done in August through October. Kalvin said that no salary was paid in August and September because insufficient funds were collected.

Sentry offered evidence, drawn from the accounting journals of Roberts's corporation showing corporate receipts, expenses, and payments to Roberts for the last five months of 1980 as follows:

| Month | Receipts | Expenses (Exclude Salary to Dr. R) | Salary |
|-------|----------|-----------------------------------|--------|
| August | $7,431 | $0 | $0 |
| September | 18,085 | 16,420 | 0 |
| October | 26,265 | 15,552 | 87,999 |
| November | 38,874 | 14,750 | 962 |
| December | 33,351 | 21,921 | 962 |

In January 1981 Roberts caused his corporation to adopt a resolution providing that his salary would be paid not monthly but by lump sum each October. The resolution's purpose was to let Roberts continue to get disability benefits.

From June 1980 through April 1986 Roberts's corporation received revenues totalling $3,928,000 (about $660,000 per year) from patients seen by Roberts. During those years the corporation paid Roberts only in October (1980, $87,999; 1981, $398,000; 1982, 1983, 1984, $400,000; 1985,

$428,088). Additional revenues were paid into investment accounts held by the corporation.

Each month except October, from 1981 through 1985, Roberts claimed disability benefits, stating that he had received no salary. Sentry paid these claims. Each October Roberts told Sentry that he was not entitled to a payment, because half his earned compensation exceeded $3,000. Roberts refused to tell Sentry the *amount* of the salary received each October, or the amount of the corporation's accumulated earnings, claiming he was not obliged to do so.

In late 1983 Sentry found a sworn declaration filed by Roberts in his divorce case stating that he was earning $33,333 per month.

In April 1984 Sentry brought the federal suit to recover the payments to Roberts. Sentry's legal theories included breach of contract, money had and received, money paid by mistake, breach of the covenant of good faith and fair dealing, and fraud. Sentry also requested declaratory relief.

In July 1987 the federal district court (Judge Alice-Marie Stotler) granted Sentry's partial summary judgment motion, finding that Roberts's corporation was his alter ego, and that Sentry's contract claims were meritorious. The court ordered a refund of all disability payments made by Sentry after December 1980.

In December 1987 the court heard a motion by Roberts and his corporation for partial summary judgment on the fraud claim. Roberts argued that the claim was time-barred, and also defective on the merits. Sentry opposed with, among other evidence, the declaration testimony of Mr. Bossenbroek concerning reliance on Roberts's alleged fraud. Bossenbroek testified that: Sentry learned early in its lawsuit that Roberts's corporation had income exceeding expenses, but was paying Roberts only each October; before suit Roberts refused to tell Sentry the amounts of his salary or corporate income and expenses; *had the information been revealed, Sentry would have considered the corporation's earnings to be Roberts's, reducing his disability payment to zero.*

Also before the court was evidence that Sentry paid Roberts full benefits after suing, continuing until the court ordered Roberts to refund past payments, and resuming when (see below) the Ninth Circuit reversed the refund order. Roberts contended that these continuing payments were motivated by Sentry's fear of a bad faith suit, and that for this reason Sentry would have continued paying Roberts even had Sentry known in 1981 of corporation's

large earnings and Roberts's large salary. This showed, Roberts argued, that Sentry did not rely on the alleged falsehoods and nondisclosure.

The federal court denied Roberts's summary judgment motion, finding that Sentry with reasonable diligence could not have discovered its potential fraud claims earlier, and that "whether Dr. Roberts concealed information regarding his earnings and what his intent might have been in so doing constitute material questions of fact. Since the Court cannot state as a matter of fact or law that Roberts did not conceal material facts from Sentry, with the intent to deceive, summary judgment would be inappropriate."

Thereafter the court tried the fraud and bad faith claims, resolving these in Roberts's favor.

Roberts appealed from the order finding the corporation to be his alter ego, and requiring refund of the disability payments. Respondents did not appeal from dismissal of their fraud and bad faith claims. The Ninth Circuit reversed the trial court's summary determination that Roberts and his corporation were alter egos. The district court then reversed itself and ruled against Sentry on the contract claims. The Ninth Circuit affirmed this decision.

In opposing summary judgment in the superior court, Roberts relied heavily on Bossenbroek's 1998 deposition testimony in the malicious prosecution case. Roberts claimed the deposition testimony showed that Bossenbroek's 1987 declaration was materially false. The questions and answers crucial for this appeal were as follows:

"Q. And what you wanted the [federal] court to conclude from your [declaration] testimony was if you had known what [Roberts's] true income was, you wouldn't have paid him the benefits; isn't that true?

"A. I don't recall whether that is exactly true, no.

"Q. What do you recall you meant when you testified that Sentry paid the benefits . . . because Sentry believed Dr. Roberts had misled or concealed things from Sentry?

"A. Well my recollection is that *the issue would have been brought to a head earlier*, and exactly what we would have done had we been aware of the entire situation, I'm not sure.

"Q. What would you have done—I'm sorry, I interrupted you.

"A. I'm sorry. I just don't recollect much of it, so I'm not sure I can adequately answer your question." (Italics added.)

The superior court granted summary judgment in favor of Sentry and the partners of Adams, Duque & Hazeltine, and dismissed the malicious prosecution suit.

This appeal followed.

## DISCUSSION

■ Roberts contends that there were factual issues for trial as to whether respondents lacked probable cause to sue and whether they prosecuted the federal suit maliciously. Plaintiff must prove these elements in a malicious prosecution suit. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) Plaintiff also must prove the earlier suit was terminated in his favor. (*Ibid.*)

■ A plaintiff has probable cause to bring a civil suit if his claim is legally tenable. This question is addressed objectively, without regard to the mental state of plaintiff or his attorney. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 881 [254 Cal.Rptr. 336, 765 P.2d 498].) The *court* determines as a question of law whether there was probable cause to bring the maliciously prosecuted suit. (*Id.* at p. 874.) Probable cause is present *unless any reasonable attorney would agree that the action is totally and completely without merit.* (*Id.* at p. 885.) This permissive standard for bringing suits, and corresponding high threshold for malicious prosecution claims, assures that litigants with potentially valid claims won't be deterred by threat of liability for malicious prosecution. (*Id.* at p. 872.)

Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must *separately* show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present no probable cause. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] [an appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions].)

■ Respondents argue that Judge Stotler's ruling that Roberts and his corporation were alter egos created a conclusive presumption of probable

cause to sue for fraud, because it meant corporate earnings were imputed to Roberts, and that Roberts therefore was obliged to *disclose* corporate earnings and allow Sentry to reduce benefits. Sentry also argues that Judge Stotler's denial of summary judgment on the fraud claim is compelling evidence that the claims were legally tenable.

California courts have held that victory at *trial*, though reversed on appeal, conclusively establishes probable cause. (*Cowles* v. *Carter* (1981) 115 Cal.App.3d 350, 355-359 [171 Cal.Rptr. 269] [conclusive presumption of probable cause where plaintiff wins on merits after fair adversary hearing, though win later reversed on appeal]; *Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 692, fn. 15 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [citing "rule that an interim adverse judgment on the merits, even though subsequently set aside on motion or on appeal, conclusively establishes probable cause for the prior action"].) The rationale is that approval by the trier of fact, after a full adversary hearing, sufficiently demonstrates that an action was legally tenable. (*Cowles, supra,* at p. 358.) To put it differently, success at trial shows that the suit was not among the least meritorious of meritless suits, those which are totally meritless and thus lack probable cause.

Denial of a defendant's summary judgment motion provides similarly persuasive evidence that a suit does not totally lack merit. A federal judge denies summary judgment if there are "genuine issues of material fact" for trial, and the moving party is not "entitled to judgment as a matter of law." (Fed. Rules Civ.Proc., rule 56(c), 28 U.S.C.) A California judge must reach similar conclusions to deny summary judgment. (Code Civ. Proc., § 437c, subd. (c).) These conclusions necessarily imply that the judge finds at least some merit in the claim. The claimant may win, if certain material facts are decided favorably. This finding (unless disregarded) compels conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit.

Several considerations show that denial of summary judgment in the underlying case is a reliable indicator that probable cause is present.

First, summary judgment motions usually are heard only after full discovery develops the evidence relevant to the claim. Continuances are available if a party has been unable to do full discovery. (E.g., Code Civ. Proc., § 437c, subd. (h).) Thus, summary judgment rulings usually are grounded in a dependable evaluation of the facts.

Second, the judge denying summary judgment is *impartial.* (If not, the parties have means to disqualify.) The universe of reasonable lawyers includes some predisposed toward plaintiffs, some toward defendants. A

judge's case assessment probably will fall *between* aggressive plaintiff and defense assessments, and thus likely will agree with some hypothetical "reasonable lawyers." So a judge's denial of summary judgment accurately predicts that reasonable lawyers would find a case arguably meritorious. (*Hufstedler, Kaus & Ettinger* v. *Superior Court* (1996) 42 Cal.App.4th 55, 69 [49 Cal.Rptr.2d 551] [denial of summary judgment supports conclusion that claim was objectively tenable].)

Because denial of summary judgment is a sound indicator of probable cause, it is sensible to accept it as establishing probable cause defeating a later malicious prosecution suit. Doing so serves the policy expressed in *Sheldon Appel* to discourage dubious malicious prosecution suits.

Roberts cites *Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777 [205 Cal.Rptr. 62], a case declining to treat denial of summary judgment as conclusive that probable cause existed. However, *Lucchesi* was decided before *Sheldon Appel*, when probable cause included an element of subjective good faith. (*Lucchesi, supra*, at p. 785 ["Even though the instigator had knowledge of facts sufficient to cause a reasonable person to believe the other party legally accountable, he is not protected [from malicious prosecution liability] *if he did not actually hold such belief.*" (Italics added.)].) Before *Sheldon Appel*, one could be sued for bad faith prosecution of a claim that was objectively legally tenable. Denial of summary judgment shows objective legal tenability, but says nothing about the claimant's good faith. So before *Sheldon Appel* it was proper to refuse to find probable cause based solely on denial of summary judgment. But *Sheldon Appel* changed the standard for probable cause, eliminating the subjective element, and instead prescribing a wholly objective inquiry whether the claim was frivolous or without merit. (See *Downey Venture* v. *LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 496 [78 Cal.Rptr.2d 142].)

We conclude that denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit.

We say "normally" rather than "conclusively" because there may be situations where denial of summary judgment should not irrefutably establish probable cause. For example, if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong. Summary judgment might have been granted but for the false evidence. (For that matter, a jury verdict also might be induced by materially false testimony, raising a good argument that no conclusive presumption of probable cause should arise.)

Roberts argues that Judge Stotler's summary judgment denial was based on false evidence and thus should not establish probable cause. He claims that Bossenbroek's 1987 declaration was false in averring that Sentry relied on Roberts's fraud. He contends that Bossenbroek *admitted* this evidence was false in his 1998 deposition testimony quoted above. Roberts also argues that Sentry's continuing payments after suing disproves Sentry's claim that it relied on Roberts's concealments.

However, a fair reading of the declaration and deposition testimony refutes Roberts's claim. In the declaration Bossenbroek simply said that Roberts's undisclosed earnings would have reduced the amount payable to Roberts. Bossenbroek did not say whether Sentry would have resorted to self-help, simply cutting off the payments, or sought court permission to do so (given insurers' potential liability for bad faith, and Roberts's belligerent posture, no one could reasonably fault Sentry for selecting the latter course).

In the deposition, asked how Sentry relied on Roberts's fraud, Bossenbroek said, *"the issue would have been brought to a head earlier"* had Sentry known the size of corporate earnings and salary. (Italics added.) This does not contradict the declaration, and Sentry's conduct corroborates it. Sentry *paid* Roberts full disability benefits from 1981 to 1983, but filed suit when it learned of the divorce declaration showing Roberts receiving $33,333 per month. Had Sentry learned of the large accumulated corporate receipts in early 1981, Sentry could have sued three years earlier, thus avoiding (if it prevailed on its claims) some $118,000 in benefits paid to Roberts from 1981 through 1984. As Bossenbroek put it, Sentry could have brought the issue to a head earlier. Its failure to do so was detrimental reliance sufficient to warrant bringing suit for fraud. And, Judge Stotler knew of these facts establishing reliance when she denied Roberts's motion for summary judgment.

In this case, Judge Stotler's denial of summary judgment on the fraud claims was not induced by false evidence, and is sufficient to establish probable cause for suit.

Moreover, independent of Judge Stotler's rulings, we would conclude that Sentry had probable cause to sue for fraud. A reasonable lawyer representing Sentry could conclude that Roberts's salary was "earned" in the months when the services generating it were paid, even though salary was paid once yearly. The policy's purpose was to protect *disabled* doctors, not to furnish extra income for doctors earning more than $400,000 per year. Most reasonable lawyers viewing this case would conclude that Roberts's machinations with his corporation and his "annual" salary were contrary to the policy's

spirit, if not its letter, and that his concealment from Sentry of his true economic earnings was material and induced Sentry to pay him for several years before challenging what genuinely appeared to be an abuse.

Sentry also had probable cause to sue Roberts and his corporation for breach of the covenant of good faith. This covenant requires that parties to a contract do nothing to frustrate the other party's receipt of the bargained-for benefits. (*McMillin Scripps North Partnership* v. *Royal Ins. Co.* (1993) 19 Cal.App.4th 1215, 1222 [23 Cal.Rptr.2d 243].) This covenant binds the insured as well as the insurer. (*Commercial Union Assurance Companies* v. *Safeway Stores Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038] [duty is a "two-way street, running from the insured to his insurer as well as vice versa [citations]"].) If there were probable cause to sue for fraud based on misrepresentations and concealment which induced the payment of benefits not due, the same facts, without more, also supported the bringing of a claim for bad faith.

In light of the foregoing, we need not address Roberts's claim that Sentry's prosecution of the action was malicious. The presence of probable cause, without more, was sufficient to defeat his action for malicious prosecution.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Lillie, P. J., and Woods, J., concurred.

A petition for a rehearing was denied December 13, 1999, and appellants' petition for review by the Supreme Court was denied February 16, 2000.