Filed 1/24/14  Monex Deposit Co. v. Parsons CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MONEX DEPOSIT COMPANY, | |
| Plaintiff and Respondent, | G048126 |
| v. | (Super. Ct. No. 30-2012-00603273) |
| TERRY PARSONS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

Klein & Wilson and Gerald A. Klein for Defendant and Appellant.

Borchard & Callahan, Thomas J. Borchard and Sean Dumm for Plaintiff and Respondent.

Defendant Terry Parsons appeals from the order denying his special motion to strike as a strategic lawsuit against public participation (SLAPP),[1] the malicious prosecution action filed against him by plaintiff Monex Deposit Company (Monex). Parsons argues the trial court erred in denying his anti-SLAPP motion because, as a matter of law, Monex cannot establish one element of the malicious prosecution claim: that Parsons lacked probable cause to bring the underlying lawsuit. Parsons is wrong. We affirm.

## FACTS AND PROCEDURAL HISTORY

Parsons was 65 years old and had worked as a commodities broker for Monex, a precious metals dealer, for 35 years when Monex fired him. Monex claimed it fired Parsons because he violated the company's strict rule against "discretionary trading," essentially selling clients' holdings without prior client authorization. In a subsequent lawsuit (the underlying complaint), Parsons asserted that Monex leveled trumped up charge of discretionary trading violations against him as a pretext to hide the true, discriminatory purpose behind his firing. Parsons alleged Monex fired him because of his age and physical disability.

### 1. The Underlying Complaint

The underlying complaint stated five discrimination claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, §12900 et seq.), in addition to causes of action for wrongful termination, breach of contract, and other claims. Three of the FEHA counts in the underlying complaint are at issue in this appeal, and thus their essential allegations are summarized here.

By way of background, the underlying complaint alleged that Parsons had enjoyed a long and highly successful career at Monex, inhabiting the top rung of salepersons in the company. In 2005 and 2006, however, he began to experience

---

[1] (Code Civ. Proc., § 425.16.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

significant age discrimination at the hands of new management. This discriminatory treatment negatively impacted his income and working conditions, and increased the stress inherent in commodities trading. In October 2006, Parsons "began to experience abnormal chest pains" that he believed were stress induced. He went to his doctor who "diagnosed [Parsons] with a heart condition and informed him that he had actually experienced multiple heart attacks over a three[-]month period. Plaintiff's physician prescribed him with four . . . weeks time off work so that his body could recover from the multiple heart attacks."

The underlying complaint alleges that "[i]mmediately after receiving his diagnosis," Parsons informed Monex "of his heart condition" and asked for four weeks off, not the "immediate leave of absence from work" that his doctor "instructed him to take," but rather a leave "from December 17, 2006 to January 10, 2007" because "the market usually slowed down over the holidays." Monex allowed Parsons to take the leave as vacation time. (During discovery, Parsons revealed that he and a companion traveled to China and Thailand during this time; he did not seek any medical attention, but "de-stressed" by attending an "elephant camp" and a spa.)

When, in early January 2007, Parsons returned from his long vacation "necessitated by his medical disability," Monex penalized him for taking four weeks off by permanently redistributing to other brokers his entire book of business. Monex had changed its vacation policy to penalize any vacation lasting longer than five consecutive work days, and made the new policy retroactively applicable to Parsons, despite having preapproved his extended leave. Additionally, after Parsons returned from his "medical leave of absence/vacation," Monex never "asked whether he needed any reasonable accommodation for his physical disability."

For the next 20 months, Monex continued singling Parsons out for unfair and punitive treatment not shown to other salespersons, all younger and none physically disabled. At the end of October 2008, Monex "abruptly" and "unjustly" fired Parsons.

3

Parsons consulted with labor law specialist Katrina Foley, who filed an action against Monex on Parson's behalf, stating various claims for employment discrimination, wrongful termination, and other contract and tort claims. Among the eleven stated claims were the three FEHA claims (counts 2, 3, and 4) for disability discrimination at issue in this appeal.

Count 2 in the underlying complaint was a FEHA claim for discrimination based on physical disability. Count 3 alleged failure to engage in the interactive process to determine reasonable accommodations for disability. Count 4 alleged failure to accommodate physical disability.

2. *Pretrial, Trial and Posttrial Proceedings*

Monex moved for summary judgment or, alternatively, summary adjudication of multiple issues. The trial court denied the bulk of the motion, but granted summary adjudication as to counts 3 and 4 on several grounds. The minute order stated: "Summary adjudication of the 3rd and 4th causes of action is GRANTED on the ground that the only evidence of a request for accommodation was when Plaintiff requested medical leave in 2006. Parson's [*sic*] declaration, ¶11. Any claim based on this request is time barred as it is undisputed that Plaintiff did not file his [California Department of Fair Employment and Housing] claim until 2009. Govt. Code, § 12960. Plaintiff presents no evidence that he requested either [*sic*] an accommodation for his heart condition or initiated the interactive process regarding it at any time thereafter. See Govt. Code, § 12940(n). In addition, the complaint alleges that Plaintiff was not disabled, i.e., that he was at all relevant times able to perform the essential functions of his position. Complaint, ¶¶80 and 90. Plaintiff presents no evidence to the contrary."

The parties eventually tried the case to a jury. At close of Parsons's evidence, Monex moved for nonsuit on all claims. The remaining claims consisted of age discrimination (count 1), disability discrimination (count 2), retaliation for requesting

4

accommodation and complaining (count 5), and wrongful termination (count 8). The trial court denied the nonsuit motion.

The jury eventually returned a unanimous verdict for the defense on all counts. Relevant to our purposes here, the jury specifically found that Parsons's "disability [was not] a motivating reason for [Monex's] discharge or demotion or material change in the conditions . . . of employment." The jury further found that Monex *did not know* "that Terry Parsons had a physical disability that limited his ability to work."

Monex made a posttrial motion for attorney fees under Government Code section 12965, subdivision (b), for Parsons's act of bringing "frivolous" FEHA claims. The trial court denied the motion, observing that the three FEHA claims taken together were not "vexatious" or "frivolous."

*3. Round Two: Malicious Prosecution Complaint*

Monex then sued Parsons for malicious prosecution as to the three FEHA claims based on disability discrimination. A claim for malicious prosecution requires proof "the prior action was begun with malice and without probable cause at the defendant's direction and was terminated in the plaintiff's favor. . . . (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.)" (*Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1544 (*Bisno*).)

The essence of Monex's malicious prosecution lawsuit was that Parsons included in the underlying complaint the three causes of action for disability discrimination without probable cause. Monex alleged Parsons supported these three claims with allegations that he knew were untrue. Specifically, Parsons had alleged he had a disabling medical condition and suffered multiple heart attacks over a three-month period, he requested reasonable accommodations for his heart condition which Monex denied, and Monex discriminated against him for asking for accommodations and taking a medical leave. Monex further alleged that at the time Parsons filed the complaint, he knew these allegations were false, and that Parsons's own testimony at deposition and

5

trial, and his medical records, proved there was no evidence to support these allegations. Monex alleged Parsons pursued these false claims out of malice, in order to extract a large settlement in the underlying action.

*4. Anti-SLAPP Motion*

Parsons filed a special motion to strike Monex's complaint under section 425.16. Essentially, the anti-SLAPP motion contended Monex could not prevail in the malicious prosecution action as a matter of law because it could not establish one element of the claim: that Parsons lacked probable cause to file the underlying complaint.

Parsons argued that the trial court's denial of Monex's motion for nonsuit established as a matter of law that Parsons had probable cause to bring count 2. As to counts 3 and 4, Parsons argued that he had relied on advice of counsel in bringing those claims, which is a "complete defense" to malicious prosecution. Additionally, Parsons slipped in an argument that "[t]o the extent the court granted summary adjudication [of counts 3 and 4] based upon the statute of limitation[s]," that adjudication does not constitute the necessary determination "on the merits."

Parsons submitted two declarations in support of the anti-SLAPP motion. One declaration was from attorney Foley, essentially explaining why she subjectively concluded that Parsons had valid claims for disability discrimination as set forth in counts 2, 3 and 4, based on the facts he told her. The other declaration was from Parsons, which essentially stated that he filed the complaint in complete reliance on Foley's expert advice that he had legitimate disability discrimination claims. He also stated that at the time he was terminated by Monex, "I strongly believed — and still believe" that, after he told Monex of "my heart problems and requested accommodations[,] . . . the new regime terminated me because of my age and physical condition." Parsons also stated the following in regard to his communications with Foley: "I told Foley everything I knew about my situation at Monex that I believed was relevant to any potential claim I had. I held back nothing and answered all of Foley's questions as directly as possible."

6

Monex opposed the anti-SLAPP motion with a detailed presentation of evidence, drawn from the underlying case, establishing that Parsons's allegations of disability discrimination in the underlying complaint lacked probable cause. Specifically, Monex offered Parsons's own deposition and trial testimony, as well as his medical records, to establish that Parsons did not believe he had a physical disability, had never been told he had even a single heart attack, let alone "multiple heart attacks," had never been diagnosed with angina, had never been hospitalized or been prescribed medication for his heart, and had never been instructed by a doctor to take a medical leave or told he had physical restrictions or was physically disabled due to a heart condition. Additionally, the proffered evidence established that Parsons never told Monex he had a heart condition and never asked Monex for accommodation for his medical condition.

Along with filing the opposition to the anti-SLAPP motion, Monex sought leave from the automatic stay to conduct discovery as to the communications between Parsons and his attorney Foley, in light of Parsons's advice of counsel defense.

The trial court denied the anti-SLAPP motion in a minute order that stated: "Although Monex'[s] malicious prosecution complaint arises from protected activity, i.e., the filing of Parsons'[s] 2009 complaint, Monex has demonstrated sufficient facts to sustain a favorable judgment. Parsons'[s] advice of counsel defense fails, as it appears he did not confer with counsel in good faith, in that he misrepresented his medical condition and other facts critical to the causes of action asserted in the underlying matter." The trial court declared Monex's motion for discovery "moot."

Parsons filed the instant appeal from the order denying the anti-SLAPP motion, staying the case pending the appeal.

## DISCUSSION

Parsons contends the trial court erred in denying his anti-SLAPP motion because, as a matter of law, Monex cannot establish the "absence of probable cause" element of its malicious prosecution case.

7

Parsons begins his argument on appeal by citing the extremely high burden Monex faces in proving absence of probable cause (essentially, a malicious prosecution plaintiff must prove no reasonable attorney would conclude the prior claim has merit), and asserts Monex cannot meet that burden because the facts of this case "present an objectively reasonable basis for a party (or lawyer) to believe Parsons had probable cause to bring his [disability discrimination claims]." But Parsons argues that this court need not consider whether Monex met its evidentiary burden in opposition to the anti-SLAPP motion, because *as a matter of law* Monex cannot establish that Parsons lacked probable cause to bring the disability claims.

Parsons makes essentially three arguments. First, Parsons contends that he filed all three claims based on advice of counsel, and that is a complete defense to malicious prosecution under the case law. Second, he contends that the trial court's denial of nonsuit as to count 2 established probable cause as to that count. Third, he contends the trial court's denial of the posttrial attorney fees motion under FEHA established probable cause for all three disability discrimination counts. None of Parsons's arguments has merit.

Parsons also makes a half-hearted attempt to argue that "to the extent" the summary adjudication of counts 3 and 4 was based on the statute of limitations, that does not count as the "determination on the merits" required for malicious prosecution. But that argument is patently meritless in light of the trial court's ruling granting summary adjudication on multiple grounds, including that Parsons offered no evidence that "he requested either an accommodation for his heart condition or initiated the interactive process regarding it"— elements of the two claims at issue. Consequently, we will not discuss that argument further.

*1. Applicable Legal Standards*

An anti-SLAPP motion is a special statutory "procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation." (*Gerbosi*

8

*v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443.) If the defendant makes the "threshold showing that the challenged cause of action is one 'arising from protected activity'" (*ibid*), which is undisputed here, then "the burden shifts to the plaintiff to demonstrate a reasonable probability of prevailing on the merits of his cause of action. (*Equilon* [*Enterprises v. Consumer Cause, Inc*. (2002)] 29 Cal.4th [53,] 67; § 425.16, subd. (b)(1).) 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [(*Wilson*)], abrogated in part by statute as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547 (*Hutton*).) The role of the trial court is not to weigh the credibility or comparative strength of the parties' evidence; rather, it determines whether the defendant's evidence defeats the plaintiff's prima facie showing as a matter of law. (*Wilson*[,] *supra*, at p. 821.)" (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 119.)

In *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, the court explained the standard of review applicable to an order granting or denying an anti-SLAPP motion: We review such an order "de novo, applying the same two-step procedure as the trial court. [Citation.] We look at the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence '"only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.] The plaintiff's cause of action needs to have only '"minimal merit" [citation]' to survive an anti-SLAPP motion. [Citation.]" (*Id*. at p. 1105.)

2. *Advice of Counsel Defense*

Parsons argues that he relied entirely on his attorney's advice in bringing the challenged disability discrimination claims, and that reliance on advice of counsel is a complete defense to a malicious prosecution case, citing *Bisno*, *supra*, 174 Cal.App.4th at

9

page 1544. But Parsons's argument omits a crucial part of the test for applying the advice of counsel defense.

"Good faith reliance on the advice of counsel, *after truthful disclosure of all the relevant facts*, is a complete defense to a malicious prosecution claim. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53-54.)" (*Bisno*, *supra*, 174 Cal.App.4th at p. 1544, italics added.) The advice of counsel defense depends on the client's *truthful* disclosure of the relevant facts. Monex made a prima facie showing in opposition to the anti-SLAPP motion that Parsons was not truthful in disclosing the facts to Foley.

Case law holds that a litigant lacks probable cause for his action if he relies on facts which he has no reasonable cause to believe are true. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 567-568.) Monex's evidence established Parsons had no reasonable basis for believing the allegations in his complaint that he had a disabling medical condition or that he requested and was denied accommodations for that condition, at the time the complaint was filed. That prima facie showing by Monex was sufficient to defeat the anti-SLAPP motion and allow Monex a chance to prove to a jury that Parsons did not have probable cause to sue for disability discrimination. Consequently, the trial court properly rejected the advice of counsel defense as a basis for granting the anti-SLAPP motion.

*3. Denial of Nonsuit*

Parsons argues that the denial of nonsuit as to count 2 established probable cause as a matter of law, citing *Wilson*, *supra*, 28 Cal.4th at page 824. But, again, Parsons omits a crucial part of the authority he cites.

In *Wilson*, the Supreme Court cited the general rule that, "Denial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict." (*Wilson*, *supra*, 28 Cal.4th at p. 824.)

10

A close reading of *Wilson* reveals the stated rule does not apply here to support Parsons's anti-SLAPP motion.

*Wilson*, like the present case, involved an anti-SLAPP motion filed in a malicious prosecution action. The issue in *Wilson* was whether the trial court's denial of an anti-SLAPP motion in the prior case determined that the prior case had probable cause. The high court concluded that the ruling did have that effect — a ruling that was later abrogated by a revision to the anti-SLAPP statute, as reported in *Hutton*, *supra*, 150 Cal.App.4th at page 547. Importantly, the statutory revision concerned only the conclusive presumption arising from the denial of an anti-SLAPP motion; it did not alter the general rule discussed by the high court. But the general rule cited by the high court in *Wilson* has a caveat applicable here.

Denial of a dispositive motion such as a defense motion for summary judgment or a nonsuit may "normally" establish that there is probable cause for the claim, creating a defense to malicious prosecution. (*Roberts v. Sentry Life Insurance Co.* (1999) 76 Cal.App.4th 375, 385.) However, no such presumption arises where the court's decision on that motion is based upon false evidence. (*Ibid.*) The high court in *Wilson* referenced this exception to the "normal" or general rule when it noted that "[p]laintiffs in the present malicious prosecution action have not attempted to show that that ruling was obtained by fraud or perjured testimony." (*Wilson*, *supra*, 28 Cal.4th at p. 826.) The clear implication from the high court's observation is that had there been some proof that false evidence had been used to defeat the anti-SLAPP motion in the prior case, the denial of that anti-SLAPP motion would not have established probable cause for that prior claim.

Here, unlike in *Wilson*, Monex has introduced proof that Parsons submitted false evidence at trial in support of his disability discrimination claim. Consequently, the "normal" rule does not apply and denial of nonsuit does not conclusively establish

11

probable cause for count 2. (*Roberts*, *supra*, 76 Cal.App.4th at p. 385.) We conclude the denial of nonsuit does not defeat the malicious prosecution claim as a matter of law.

*4. Denial of the FEHA Attorney Fees Motion*

Finally, Parsons asserts that the trial court's denial of Monex's motion for attorney fees for bringing "frivolous" and "unmeritorious" FEHA claims establishes probable cause for the disability discrimination claims. More specifically, he asserts that Judge Geoffrey T. Glass, in ruling on the fee motion, made a specific finding that the three disability claims were not "frivolous, meritless, vexatious," and this finding was binding, based on the doctrine of collateral estoppel, on the new judge, Judge Nakamura, who decided the anti-SLAPP motion.

There are several problems with Parsons's argument, but the clearest one is that he has failed to provide an adequate record to support the argument. Parsons does not cite to either a written motion or an oral motion for fees; he cites only to a brief excerpt from the reporter's transcript containing part of the argument on the fee motion. Without record support, Parsons asserts that the motion concerned only fees for the three disability claims at issue here, and that the trial court's finding that these claims were not frivolous is binding under collateral estoppel principles.

Monex, however, asserts that the fee motion concerned all of the FEHA claims, including the arguably more meritorious claim of age discrimination. Moreover, Monex argues that the trial court's decision to deny fees was based on its assessment of the merits of all these FEHA claims, not just the disability claims. Consequently, the same issue was not decided as is posed here. Collateral estoppel applies only when identical issues were decided in a prior ruling.

The denial of the attorney fees motion does not establish probable cause for the disability discrimination claims. We find no error in the trial court's order denying the anti-SLAPP motion.

**DISPOSITION**

The order denying the special motion to strike the complaint under § 425.16 is affirmed.  Monex is entitled to its costs on appeal.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.