121 Cal.Rptr.2d 14 (2002)
98 Cal.App.4th 521
STROOCK & STROOCK & LAVAN LLP, Plaintiff and Appellant,
v.
Mar-Jeanne TENDLER et al., Defendants and Respondents.
No. B147408.
Court of Appeal, Second District, Division Eight.
May 16, 2002.
Rehearing Granted June 17, 2002.
*19 Stroock & Stroock & Lavan, Michael F. Perlis, D. Wayne Jeffries, James W. Denison, Los Angeles, and Deborah Drooz for Plaintiff and Appellant.
Bohm, Francis, Kegel & Aguilera and Craig A. Kegel, Irving, for Defendants and Respondents Mar-Jeanne Tendler and Arthur Tendler.
Robie & Matthai, Edith R. Matthai and Natalie A. Kouyoumdjian, Los Angeles, for Defendants and Respondents Robert C. Rosen and The Law Office of Rosen and Associates.
BOLAND, J.

SUMMARY
Stroock & Stroock & Lavan, LLP, a law firm, sued Mar-Jeanne and Arthur Tendler, and lawyers Robert C. Rosen and Rosen and Associates, for malicious prosecution of a malpractice suit by the Tendlers' company, Wiz Technology, Inc., against Stroock. The malpractice suit alleged Stroock had represented Wiz in connection with Wiz's initial public offering (IPO), and violated its duties to Wiz by (a) representing the underwriter of the IPO (Strasbourger) in a lawsuit Strasbourger later brought against Wiz for breach of agreements related to the IPO, and (b) representing Wiz's auditors, Coopers & Lybrand, in a Securities & Exchange Commission investigation of Wiz, thereby *20 forming a conduit for dissemination of confidential information about Wiz from its auditors to its litigation adversary, Strasbourger.
The allegations in the malpractice suit against Stroock had earlier formed the basis for a motion Wiz brought to disqualify Stroock from representing Strasbourger in the Strasbourger litigation. The disqualification motion succeeded at the trial court level, but the trial court's ruling was eventually reversed by the court of appeal, which held (a) Stroock never represented Wiz, and (b) Stroock owed no duty of confidentiality to Wiz by virtue of its representation of Wiz's auditors. After the Supreme Court denied review, Wiz dismissed the malpractice suit, which had been filed while the appeal of the disqualification order was pending and just before expiration of the statute of limitations.
Stroock then filed this suit for malicious prosecution against Wiz's lawyers, Robert C. Rosen and Rosen and Associates (Rosen), and the Tendlers, who, as members of the Wiz board of directors, authorized filing the malpractice suit against Stroock. Stroock alleged Rosen and the Tendlers did not have probable cause to file the malpractice suit. Stroock relied on the court of appeal's conclusion that "Stroock could only have been doing the work for Strasbourger and Wiz could not have reasonably believed otherwise," as well as on the court's rejection of Wiz's contention Stroock had a duty to Wiz independent of any prior attorney-client relationship. Stroock alleged Rosen and the Tendlers acted with malice, among other things to divert attention from an alleged scheme by the Tendlers and others fraudulently to manipulate Wiz's stock.
The Tendlers brought a motion for summary judgment, asserting among other grounds an affirmative defense that the malpractice suit was brought in reliance on the advice of counsel. Rosen filed a special motion to strike Stroock's complaint under the anti-SLAPP (strategic lawsuit against public participation) statute. The trial court granted both motions, and Stroock appeals both rulings.
We conclude that:
(1) The trial court erred in granting Rosen's motion to strike the complaint. While the anti-SLAPP statute applies to a malicious prosecution action, Stroock demonstrated a probability it would prevail on the merits, because Rosen had no probable cause to file a malpractice suit premised on the claim that an attorney-client relationship once existed between Stroock and Wiz.
(2) The trial court did not err in granting summary judgment to the Tendlers, who established they relied on counsel's advice when they authorized Rosen to file the malpractice complaint against Stroock.

FACTUAL AND PROCEDURAL BACKGROUND
This malicious prosecution action follows numerous other lawsuits brought by and against Wiz Technology, Inc., and its officers and directors after Wiz, a computer software company formed by Mar-Jeanne and Arthur Tendler, issued common stock to the public in an IPO in February 1994. The details of two of the lawsuits are particularly pertinent to this appeal, and we begin by describing those actions.

1. Wiz's public offering and the Strasbourger lawsuit.
The facts surrounding Wiz's initial public offering, and the first of the subsequent lawsuits that eventually resulted in this malicious prosecution action, are succinctly related in the court of appeal's opinion in *21 Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc. (1999) 69 Cal. App.4th 1399, 82 Cal.Rptr.2d 326, from which we now quote.
"Strasbourger, an investment banking firm, served as an underwriter for Wiz's public stock offering. It purchased 1,820,000 shares of Wiz stock for resale to the public. Stroock, Strasbourger's usual corporate counsel, participated in the process by preparing the registration statement, prospectus, and certain regulatory filings, performing a due diligence investigation concerning the correctness of Wiz's representations, and involving itself in the negotiation of an underwriting agreement and a warrant agreement which governed the transaction. Stroock also worked to qualify the stock under the `blue sky' laws of states where the securities were to be sold, and filed necessary materials with the National Association of Stock Dealers. To perform its functions, some of Stroock's lawyers met several times with personnel working for Wiz, which provided the lawyers with information concerning these matters.
"The underwriting agreement provided Wiz would pay the attorney fees for its counsel and Strasbourger. Hand & Hand was listed in the agreement as Wiz's counsel and Stroock was listed as Strasbourger's. The prospectus noted Hand & Hand would pass on the shares' legality and Stroock would pass on certain legal matters for Strasbourger. Wiz paid Stroock's bill of $23,666.05 for the blue sky work, as itemized in its statement to Wiz.
"About a year and a half later, Wiz engaged Coopers & Lybrand (Coopers) as auditors. To enable Coopers to do its job, Wiz disclosed financial and other information regarding every aspect of its business, activities, and operations, including accounting and management issues. Wiz also discussed the specifics of an SEC (Securities and Exchange Commission) investigation with Coopers. During this time, Stroock was legal counsel for Coopers, while it was also Strasbourger's counsel. Coopers eventually resigned as Wiz's auditors, which Wiz asserted caused its stock value and ability to raise funds to decline. Wiz believed Stroock played a part in Coopers's resignation.
"Several months later, Strasbourger sued Wiz for allegedly breaching the underwriting agreement by selling shares of its stock on its own, and breaching the warrant agreement by failing to register the shares. Wiz eventually brought a motion to disqualify Stroock from representing Strasbourger on the grounds Stroock had a conflict of interest because it represented Wiz in the stock qualification process and represented Coopers while it served as Wiz's auditor. The court granted the motion." (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at pp. 1402-1403, 82 Cal.Rptr.2d 326.)

2. The Strasbourger trial court's order disqualifying Stroock.
The trial court's order disqualifying Stroock in the Strasbourger lawsuit does not state the court's ground for the order. At the healing on the disqualification motion, on January 7, 1997, the court (Judge Michael Brenner) made a statement, parts of which suggest the court thought Stroock had represented Wiz. Most of the court's comments suggest the court was primarily concerned with an appearance of impropriety, flowing from the fact Stroock was in a position to receive information about Wiz from its client Coopers and pass that information to its other client Strasbourger *22 to use against Wiz.[1] Wiz argued both that there was an attorney-client relationship between Stroock and Wiz, and that Stroock could be disqualified without such a relationship, on the basis of receiving confidential information from its representation of one client and giving that information to another client to use in litigation against Wiz. The trial court's order granting the disqualification motion was entered on January 8, 1997.[2]

*23 3. Wiz's malpractice suit against Stroock.
Strasbourger filed an appeal of the disqualification order on February 6, 1997.[3] About six weeks later, on March 21, 1997, Rosen advised Stroock that Wiz intended to file a lawsuit against Stroock, "as Wiz's former attorneys, seeking damages for legal malpractice." Rosen advised its belief the statute of limitations would expire on March 28, 1997, and, in light of the pending appeal of the disqualification order, proposed a tolling agreement under which Wiz initially would defer filing suit until April 30, 1997. Stroock declined, and advised Rosen it would file a malicious prosecution action at the conclusion of any such litigation.
On March 28, 1997, Wiz filed its complaint for professional negligence against Stroock. Wiz did not serve the complaint, but on April 8, 1997, Stroock filed an answer, generally denying the allegations. On April 21, 1997, Wiz issued a press release announcing its suit against Stroock. On June 20, 1997, Stroock moved to stay the malpractice action, pending disposition of the appeal of the disqualification motion. Wiz filed a joinder in the motion, and the court ordered the malpractice action stayed.

4. The court of appeal's reversal of the disqualification order in Strasbourger.

On February 16, 1999, the court of appeal issued its decision in Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th 1399, 82 Cal.Rptr.2d 326, reversing the trial court's order disqualifying Stroock. The court reviewed the evidence, which included the underwriting agreement; conclusory declarations from Arthur Tendler and from Wiz's lawyer, Jehu Hand, asserting that Stroock represented Wiz; and a letter from a Stroock paralegal "advis[ing]" Wiz to send originals of certain documents rather than copies to the Pennsylvania Securities Commission. Resolving all factual issues in Wiz's favor, the court of appeal concluded Wiz could not reasonably have believed Stroock represented Wiz. Among the court's observations were these:
 "The underwriting agreement provided Wiz would pay Stroock's fees for the blue sky compliance. Nothing in the record indicates the billing or payment was based on a relationship other than that set forth in the agreementWiz was to pay Strasbourger's lawyers." (Id. at p. 1405, 82 Cal. Rptr.2d 326.)
 "This flimsy `evidence' speaks volumes. The only reasonable inference that can be drawn from it is Stroock's advice to Wiz was limited to perfunctory instructions necessary for blue sky compliance. It is not the type of evidence that connotes attorney representation." (Id. at p. 1407, 82 Cal.Rptr.2d 326.)
 "Hand's declaration asserts Stroock represented Wiz on matters other than blue sky compliance involved in the offering. Notably absent from Wiz's evidence is a bill from Stroock for any other alleged work. We cannot believe Stroock would represent Wiz in *24 these other matters on a pro bono basis. No rational trier of fact could conclude Wiz reasonably believed Stroock did." (Ibid.)

 "Typically, when an underwriting broker-dealer, like Strasbourger, purchases shares for resale, the underwriting agreement provides the underwriter's counsel will qualify the offering in each state where the underwriter wishes to make resales, as Stroock did. [Citations.] The usual industry practice coupled with the underwriting agreement precluded Wiz from reasonably believing it was responsible for blue sky compliance or that Stroock represented it in the registration work." (Id. at pp. 1407-1408, 82 Cal.Rptr.2d 326.)
 "Stroock could only have been doing the [due diligence] work for Strasbourger and Wiz could not have reasonably believed otherwise. Nor could Wiz reasonably believe Stroock represented Wiz or that information Wiz gave Stroock would be kept confidential." (Id. at p. 1408, 82 Cal.Rptr.2d 326, footnote omitted.)
 "We do not lightly reject the trial court's implied findings, but all of the evidence suggested Stroock was Strasbourger's counsel during the offering, and none of the evidence except Wiz's unsupported conclusions and assumptions suggested the contrary." (Id. at p. 1408, 82 Cal.Rptr.2d 326.)
The court of appeal also addressed and rejected Wiz's contention that Stroock had a duty to Wiz independent of any prior attorney-client relationship.[4]
Wiz petitioned for review, which was denied by the Supreme Court on May 19, 1999. After demands from Stroock, on June 23, 1999, Wiz voluntarily dismissed its malpractice action with prejudice.

5. This lawsuit: Stroock's action for malicious prosecution of the malpractice action.
On January 18, 2000, Stroock filed this action for malicious prosecution against Wiz's principals, the Tendlers, seeking compensatory and punitive damages. Stroock later amended the complaint to substitute Rosen for the Doe defendants. Stroock's complaint alleged that when Wiz filed the malpractice action, Rosen and the Tendlers knew it would not be possible for Wiz to maintain the malpractice action "if it turned out that Stroock did not represent Wiz," knew that Stroock had not represented Wiz in the stock offering, and knew no reasonable grounds existed for believing Stroock had ever represented Wiz.
On November 7, 2000, Rosen filed a special motion to strike the complaint under section 425.16 of the Code of Civil Procedure, the anti-SLAPP statute. A hearing was held on December 6, 2000, and on January 4, 2001, the trial court entered a minute order granting the motion *25 to strike. The court concluded the anti-SLAPP statute applied to malicious prosecution suits, the malpractice suit was filed with probable cause, and it was therefore unnecessary to determine whether the malpractice suit was filed with malice.
In finding probable cause for filing the malpractice suit, the court stated:
"[The] appellate court decision was made almost two years after the negligence [malpractice] complaint was filed. At the time the negligence complaint was filed, the disqualification order was stayed pending appeal. Stroock does not provide any authority in the form of case precedents] or statutory law indicating that the disqualification order, although stayed, cannot be relied upon as a factor in determining whether probable cause existed to file the complaint. The evidence established the existence of a valid issue with regard to Stroock's relationship with Wiz. However, it was not shown that no reasonable attorney would have considered the cause of action tenable given that the trial court found sufficient evidence existed to grant the motion to disqualify. Further, the statute of limitations was running and the deadline for filing the complaint was approaching. Stroock's counsel did not agree to toll the statute of limitations pending the outcome of the appeal. Thus, Rosen filed the negligence complaint to preserve its right to bring the action. Moreover, this complaint was not served upon Stroock, but rather Stroock voluntarily answered. All of these factors support a conclusion that the negligence complaint was filed with probable cause and the court so finds."
Since lack of probable cause is essential to a malicious prosecution claim, the court found Stroock could not establish a probability of success on the merits, and the complaint was stricken. On January 17, 2001, Stroock filed a notice of appeal from the minute order.[5]
Meanwhile, the Tendlers had filed answers to Stroock's complaint in March 2000, and in September 2000 filed a motion for summary judgment on five separate grounds, including that the suit was brought on the advice of counsel.[6] At the November 21, 2000 hearing, the court granted the motion "based on the affirmative defense of reliance on counsel." Stroock filed a premature notice of appeal on January 18, 2001, which is deemed filed on March 12, 2001, the date of entry of judgment. (Cal. Rules of Court, rule 2(d).)

DISCUSSION
This case presents two principal questions: whether Rosen had probable cause to file the malpractice suit on behalf of Wiz *26 premised on an attorney-client relationship between Stroock and Wiz, and whether the Tendlers are excused from any liability for malicious prosecution on the basis of reliance on the advice of counsel. We will first address the probable cause issue, raised by Rosen's motion to strike the complaint, and then move to the question whether summary judgment in the Tendlers' favor was proper. Preliminarily, however, it may be useful to identify two principles that inform our analysis of these issues.
First, where the facts are undisputed, the question whether an attorney-client relationship exists is a question of law. The court of appeal in Strasbourger, supra, determined there was no such relationship between Stroock and Wiz, and indeed that no reasonable person could conclude there was. We are bound by that determination, and in any event perceive no basis upon which to disagree with it.
Second, it is settled that an action for malicious prosecution lies for bringing an action charging multiple grounds of liability "when some but not all of those grounds were asserted with malice and without probable cause." (Crowley v. Katleman (1994) 8 Cal.4th 666, 671, 34 Cal.Rptr.2d 386, 881 P.2d 1083; Bertero v. National General Corp. (1974) 13 Cal.3d 43, 57, 118 Cal.Rptr. 184, 529 P.2d 608.) In this case, Wiz asserted a malpractice claim grounded on Stroock's prior representation of Wiz, and on a duty to Wiz arising from Stroock's representation of Wiz's auditors, "independent of the prior attorney-client relationship between Stroock and Wiz." If there were probable cause for one theory but not the other, Stroock could still bring a malicious prosecution claim.
With these principles in mind, we turn to Rosen's motion to strike Stroock's complaint.

I. The trial court erred in granting Rosen's motion to strike the complaint as a SLAPP suit.
While a malicious prosecution claim is subject to the anti-SLAPP statute, Stroock demonstrated a probability it would prevail on the merits of its claim, since Rosen did not have probable cause to file a malpractice claim against Stroock based on the theory that Stroock previously represented Wiz.
The legal principles governing anti-SLAPP motions have been described in many cases. A SLAPP is a meritless, tactical lawsuit "filed primarily to chill the defendant's exercise of First Amendment rights." (Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 815, fn. 2, 33 Cal. Rptr.2d 446.) A defendant who is the victim of such a suit may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech ... in connection with a public issue ... unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) An act in furtherance of free speech or petition rights includes any written or oral statement or writing made before a legislative, executive, judicial or other official proceeding. (Id., subd. (e)(1).)
To succeed on a special motion to strike, the moving defendant must make a prima facie showing that the plaintiffs cause of action arises from an act in furtherance of the defendant's First Amendment rights. (Wilcox v. Superior Court, supra, 27 Cal.App.4th at p. 820, 33 Cal. Rptr.2d 446.) If the defendant does so, the motion to strike will be granted unless the plaintiff has established a probability *27 the plaintiff will prevail on the claim. (Code of Civ. Proc., § 425.16, subd. (b)(1).) In 1997 the Legislature amended section 425.16 to clarify its intent to broadly construe the statute. And, in 1999 the Supreme Court resolved conflicts among the courts of appeal by holding that any statement or writing "made in, or in connection with an issue under consideration or review by, an official proceeding or body" is protected by section 425.16, whether or not it involves a public issue. (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1113, 81 Cal.Rptr.2d 471, 969 P.2d 564.)

A. A cause of action for malicious prosecution may be the subject of a special motion to strike.
We see no basis for concluding, as Stroock contends, that a malicious prosecution action is not subject to the anti-SLAPP statute. The statute applies when a claim arises from acts in furtherance of free speech or petition rights, and those rights are specifically defined to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding ...." (Code Civ. Proc., § 425.16, subd. (e)(1).) Stroock's malicious prosecution action arises from Rosen's filing of the malpractice suit against Stroock on behalf of Wiz, which on its face is constitutionally protected petitioning activity. (Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1115, 81 Cal.Rptr.2d 471, 969 P.2d 564.) Other courts have similarly concluded that malicious prosecution actions may be the subject of a special motion to strike. (Jarrow Formulas, Inc. v. LaMarche (2002) 97 Cal. App.4th 1, 17, 118 Cal.Rptr.2d 388.) As the court concluded in Jarrow Formulas, a malicious prosecution complaint directed at a defendant because she filed a cross-complaint "falls within the ambit of `[a] cause of action against a person arising from any act ... in furtherance of the person's right of petition....'" (Ibid., quoting § 425.16, subd. (b)(1); accord, Chavez v. Mendoza (2001) 94 Cal.App.4th 1083, 1087-1088, 114 Cal.Rptr.2d 825 [malicious prosecution claim arises from defendant's constitutionally protected petitioning activity and is therefore subject to the anti-SLAPP statute; analysis may be "`breathtakingly simple,'" but application of statute to facts need not be complex to be correct].)[7]
Stroock argues, however, this malicious prosecution action is exceptional and should not be subject to a special motion to strike, because section 425.16 was not intended to shelter the kind of litigation activities engaged in by Rosen.[8] Specifically, Stroock argues that Rosen's conduct did not constitute valid First Amendment activity: that is, Rosen knew Stroock was not Wiz's counsel, but nevertheless filed a complaint alleging Stroock was Wiz's counsel. For this proposition, Stroock cites Paul for Council v. Hanyecz (2001) 85 Cal.App.4th 1356, 1365, 102 Cal.Rptr.2d 864. In that case, the plaintiff alleged *28 defendants interfered with his candidacy for city council by making illegal campaign contributions to his opponent. The defendants brought a special motion to strike, arguing their campaign money laundering activity was in furtherance of their constitutional right of free speech and therefore within the protection of section 425.16, even though the activity was illegal. The court disagreed, concluding the complaint was not subject to a motion to strike because campaign money laundering "was not a valid activity" undertaken by defendants in furtherance of their free speech rights. (Id. at p. 1365, 102 Cal.Rptr.2d 864.)
This case is not analogous to Paul for Council. In that case, the illegal nature of the money laundering was conceded. The concession of illegality allowed the court to conclude, as a matter of law, that the activity was not a legitimate exercise of constitutional rights as contemplated by section 425.16. (Paul for Council v. Hanyecz, supra, 85 Cal.App.4th at p. 1367, 102 Cal.Rptr.2d 864.) As the court pointed out, "had there been a factual dispute as to the legality of defendants' actions, then we could not so easily have disposed of defendants' motion." (Ibid.) In this case, because Rosen has not conceded that the First Amendment activitythe act of filing a malpractice suitwas illegal or otherwise invalid, the principle established in Paul for Council does not apply.
Of course, the right to petition does not immunize a litigant from the consequences of initiating baseless litigation. (McDonald v. Smith (1985) 472 U.S. 479, 484-485, 105 S.Ct. 2787, 86 L.Ed.2d 384.) However, a defendant invoking the anti-SLAPP statute does not have to first prove its activity is constitutionally protected as a matter of law; it merely has to make a prima facie showing that the action arises from constitutionally protected activity. If it were otherwise, "then the inquiry as to whether the plaintiff has established a probability of success would be superfluous." (Fox Searchlight Pictures, Inc. v. Paladino (2001) 89 Cal. App.4th 294, 305, 106 Cal.Rptr.2d 906; see Chavez v. Mendoza, supra, 94 Cal.App.4th at p. 1089, 114 Cal.Rptr.2d 825 ["under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary"].) Moreover, as the court pointed out in Chavez v. Mendoza, this result is "consistent with the disfavored nature of the malicious prosecution tort, and the view that such claims are too frequently used as a dilatory and harassing device...." (94 Cal.App.4th at p. 1089, 114 Cal.Rptr.2d 825.)
Accordingly, we find this malicious prosecution action was within the ambit of the anti-SLAPP statute, and turn to the question whether Stroock established a probability of prevailing on its claim.

B. Stroock carried its burden of establishing a probability it would prevail on the claim.
To establish a claim for malicious prosecution, a plaintiff must demonstrate the prior action was begun at the direction of the defendant, pursued to a legal termination in plaintiffs favor, brought without probable cause and initiated with malice. (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 871, 254 Cal.Rptr. 336, 765 P.2d 498.) The standard for determining the probable cause element is objective, not subjective. The trial court is called upon "to make an objective determination of the `reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (Id. at p. 878, 254 Cal.Rptr. 336, 765 P.2d 498.) Whether a claim is legally tenable *29 is tested by "whether any reasonable attorney would have thought the claim tenable ...." (Id. at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.)
The trial court concluded Stroock did not show "that no reasonable attorney would have considered the cause of action ... tenable." The court based its conclusion on four factors: the Strasbourger trial court found sufficient evidence to grant the motion to disqualify Stroock, the statute of limitations deadline for filing a malpractice complaint was approaching, Stroock would not agree to toll the statute, and Wiz did not serve the malpractice complaint on Stroock but Stroock voluntarily answered.
We respectfully disagree with the trial court's assessment. First, only one of the four factors citedthe action of the Strasbourger trial courtis relevant to the question whether the malpractice action was legally tenable. Second, in analyzing that factor, the trial court here, like the Strasbourger trial court, failed to distinguish between the two different claims asserted to support the disqualification order. One of thema claim grounded on an alleged duty to Wiz independent of any attorney-client relationshipmay have been legally tenable, taking into account "the leeway a litigant must be given to argue for an evolution of legal precedents ...." (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 886, 254 Cal. Rptr. 336, 765 P.2d 498.) The other, howeverthe claim grounded on the existence of an attorney-client relationship between Stroock and Wizwas not. We explain below.

1. Stroock may bring a malicious prosecution action even if only one of two theories of liability in the underlying action was asserted without probable cause.
Wiz asserted two theories of liability in its malpractice suit, as well as in its motion to disqualify Stroock in the Strasbourger litigation. One theory was conflict of interest as a result of Stroock's alleged earlier representation of Wiz. The second was unauthorized disclosure of confidential information about Wiz, received from one Stroock client (Wiz's auditor, Coopers) and disclosed to another Stroock client (Strasbourger). The allegations of unauthorized disclosure of confidential information were based in part on Stroock's alleged previous representation of Wiz. In addition, however, Wiz claimed Coopers owed a duty of confidentiality to Wiz and that Stroock, as counsel to Coopers, had the same duty to Wiz as Coopers did, "independent of the prior attorney-client relationship between Stroock and Wiz."
In this case, we limit our inquiry to whether any reasonable attorney would have thought a malpractice claim, premised on the theory that Stroock represented Wizin connection with Wiz's public offering, blue sky compliance or any other matterswas tenable. As pointed out, an action for malicious prosecution may be maintained for bringing an action charging multiple theories of liability, even when some theories but not others were asserted without probable cause. (Crowley v. Katleman, supra, 8 Cal.4th at pp. 671, 674, 34 Cal.Rptr.2d 386, 881 P.2d 1083 [will was contested on six grounds, five of which were alleged to lack probable cause]; Bertero v. National General Corp., supra. 13 Cal.3d at pp. 55-57, 118 Cal.Rptr. 184, 529 P.2d 608 [cross-complaint alleged Bertero procured stock option agreement by undue influence, duress, and without consideration; Bertero could recover for malicious prosecution by proving only one of the three theories lacked probable *30 cause].)[9]
Rosen argues the decision to file the malpractice action was objectively tenable for two reasons: (1) the facts showed Stroock "at the very least, had a potential conflict of interest," and (2) the trial court in Strasbourger agreed and disqualified Stroock. Neither of Rosen's arguments has merit.

2. The court of appeal in Strasbourger decided Wiz could not reasonably have believed Stroock represented Wiz, and Rosen is estopped from contesting that determination.
Our analysis of Rosen's first argument begins and ends with the conclusion of the Fourth District that, at the time of the motion to disqualify Stroock, "none of the evidence except Wiz's unsupported conclusions and assumptions suggested" that Stroock was Wiz's counsel during the public offering. (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at p. 1408, 82 Cal. Rptr.2d 326.) Rosen relies on the very same "unsupported conclusions and assumptions" that were presented to the trial and appellate courts in Strasbourger.[10] The "flimsy evidence" is no more persuasive to us than it was to the Fourth District, and in any event the Strasbourger court's determination on this issue is entitled to collateral estoppel effect.[11]
Rosen argues at length it is not collaterally estopped from litigating probable *31 cause, because the issue of probable cause was not adjudicated in Strasbourger. While Strasbourger did not determine probable cause, the court clearly determined Stroock never represented Wiz and Wiz could not reasonably have believed otherwise. (See Lucido v. Superior Court (1990) 51 Cal.3d 335, 342, 272 Cal.Rptr. 767, 795 P.2d 1223["[t]he `identical issue' requirement addresses whether `identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same"]; Solari v. Atlas-Universal Service, Inc. (1963) 215 Cal.App.2d 587, 592-593, 30 Cal.Rptr. 407 [collateral estoppel "merely involves conclusive evidence of a fact in issue"].) Accordingly, we are bound by the determination Stroock did not represent Wiz and Wiz could not reasonably have believed otherwise.

3. The Strasbourger trial court's disqualification order does not establish probable cause existed for a malpractice complaint premised on Stroock's prior representation of Wiz.
Rosen argues the trial judge in Strasbourger, presumptively a reasonable attorney, concluded Stroock represented Wiz. This fact alone, Rosen contends, establishes probable cause under Roberts v. Sentry Life Insurance (1999) 76 Cal. App.4th 375, 383-384, 90 Cal.Rptr.2d 408. In Roberts, a trial court's denial of summary judgment compelled the conclusion there was probable cause, because the denial implied the judge found at least some merit in the claim, and probable cause was lacking only in the total absence of merit. Roberts found that denial of summary judgment is a reliable indicator of probable cause, principally because the judge denying summary judgment is impartial, and her denial accurately predicts that reasonable lawyers would find a case arguably meritorious. (Ibid.)
Rosen's argument is not persuasive. Neither the trial court's minute order nor the court's comments at the hearing show its disqualification order was premised on the conclusion Stroock represented Wiz. Moreover, the court of appeal necessarily concluded the trial court did not make a reasoned judgment on this point, because "none of the evidence except Wiz's unsupported conclusions and assumptions suggested" that Stroock represented Wiz. (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal. App.4th at p. 1408, 82 Cal.Rptr.2d 326.)[12]

a. The disqualification order does not show that the Strasbourger trial court thought Stroock represented Wiz.
First, the trial court's minute order disqualifying Stroock fails to state any reasons for the decision. Second, the court's remarks at the hearing show that a concern about an "appearance of impropriety" underlay its conclusion Stroock *32 should be disqualified. For example, the court said: "I don't like to use that word `impropriety' because it sounds like somebody is doing something wrong. It is not that." Surely, if the court thought Stroock had actually represented Wiz, it would have concluded Stroock was "doing something wrong" when it represented Strasbourger in litigation against Wiz. In short, there is no support in the trial court's order or its comments for Rosen's claim that the court "believed Stroock represented Wiz, and disqualified Wiz on that basis...." The disqualification order could well have been based on Wiz's other claim that Stroock's representation of Coopers, Wiz's former auditors, gave rise to a duty of confidentiality to Wiz.[13] Indeed, the court of appeal in Strasbourger expressly stated the trial court may have based its ruling on the fact that Stroock represented Coopers and therefore had a duty of confidentiality to Wiz.[14](Strasbourger, supra, 69 Cal.App.4th at p. 1409, 82 Cal.Rptr.2d 326.) Accordingly, Rosen cannot rely on the trial court's disqualification order to show a reasonable attorney would have thought a malpractice action grounded on the theory Stroock represented Wiz was legally tenable.

b. Even assuming the trial court concluded Stroock represented Wiz, that conclusion exceeded the bounds of reason, and therefore cannot indicate probable cause.
The court of appeal in Strasbourger reversed the disqualification order, explicitly finding "none of the evidence except Wiz's unsupported conclusions and assumptions suggested" Stroock was Wiz's counsel during the public offering. (Strasbourger, supra, 69 Cal.App.4th at p. 1408, 82 Cal. Rptr.2d 326.) Even if the trial court had concluded that Stroock represented Wiz, no evidence whatsoever supported that conclusion, and the trial court accordingly did not make a "reasoned judgment." (Id. at p. 1403, 82 Cal. Rptr.2d 326.) The total absence of evidence to support a position necessarily negates probable cause; no reasonable attorney would believe a claim has merit in the absence of any evidence to support it.[15]
Rosen argues the court of appeal's reversal of the disqualification order does not mean that no reasonable attorney would have believed a malpractice claim was tenable. According to Rosen, the *33 standard for probable causewhether any reasonable attorney would have believed the claim had meritis a lower standard than the substantial evidence standard the court of appeal used to find the trial court abused its discretion. Rosen is mistaken. A reasonable attorney may not bring a claim for which he knows there is no substantial evidence.[16] The court of appeal explicitly found none of the evidence "except Wiz's unsupported conclusions and assumptions" suggested Stroock represented Wiz.
In sum, we have no difficulty concluding a claim based only on "unsupported conclusions and assumptions" is not a claim "any reasonable attorney" would believe was legally tenable. Because probable cause must exist for each theory of liability asserted, the relevant question is whether a reasonable attorney could believe Stroock ever represented Wiz, not whether a reasonable attorney could bring a disqualification motionor a malpractice actionbased on some other theory. Accordingly, the trial court's undifferentiated disqualification order does not imbue Rosen's decision to bring a malpractice claim, premised on Stroock's representation of Wiz, with the necessary patina of objective tenability.

4. Stroock presented a sufficient prima facie showing of malice.
Since the trial court in this case erroneously concluded Rosen had probable cause to file a malpractice claim based on Stroock's representation of Wiz, the court did not address the question whether Stroock made a prima facie showing the claim was filed with malice. We conclude Stroock made the necessary showing because Rosen's own correspondence shows Rosen had concluded, well before the malpractice suit was filed, that Wiz was never a client of Stroock's.
For example, a Rosen lawyer (David Kronemyer) wrote to Gerald Markle, who subsequently presented an expert declaration in connection with the disqualification motion, on August 10, 1996. Kronemyer observed that the rule prohibiting lawyers from representing clients with conflicting interests applies "only to clients and former clients, none of which Wiz was."[17] Similarly, in advising Mar-Jeanne Tendler on the conflict of interest question on August 26, 1996, Kronemyer stated that, "Because Wiz never actually was Perlis' [a Stroock lawyer's] client, the law is ambiguous."[18] Kronemyer also advised the Tendlers, on March 17, 1997, just before the malpractice suit was filed, that "any such lawsuit would have to be prosecuted, if at *34 all, as one component of Wiz's total strategy versus the plaintiffs in the Strasbourger litigation."
If an action is not objectively tenable, "evidence that the defendant attorney did not subjectively believe that the action was tenable would clearly be relevant to the question of malice." (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 881, 254 Cal.Rptr. 336, 765 P.2d 498.)[19] Stroock presented evidence the Rosen firm knew Stroock did not represent Wiz, but nonetheless used that alleged representation as the premise for a malpractice suit.[20] To survive a special motion to strike, Stroock need only make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiffs favor. (Wilcox v. Superior Court, supra, 27 Cal.App.4th at p. 823, 33 Cal.Rptr.2d 446.) Stroock has made that prima facie showing.
The Rosen firm argues it always believed it had a reasonable basis to disqualify Stroock and later file the malpractice suit, and sought only to preserve its client's legal rights in the event the court of appeal upheld the disqualification order. Rosen points to its proposed tolling agreement as a less intrusive alternative to filing suit, its filing of the complaint only when Stroock refused the tolling agreement, and its failure to serve the complaint, as showing it acted prudently, not maliciously, and only to protect its client's rights. However, "[t]here is never any legitimate basis for pleading a claim unsupported by probable cause." (Mabie v. Hyatt (1998) 61 Cal.App.4th 581, 595-596, 71 Cal.Rptr.2d 657.) In any event, Rosen's motivation, in the face of Stroock's prima facie showing, is a question of fact for the jury to decide. (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 874, 254 Cal.Rptr. 336, 765 P.2d 498.)

II. The trial court properly granted summary judgment in favor of the Tendlers on the ground of their reliance on the advice of counsel.
Reliance on the advice of counsel is an affirmative defense to a malicious prosecution claim. A person acting in good faith on the advice of counsel, who has fully disclosed all relevant facts to his counsel, has a defense to a malicious prosecution claim. (Bertero v. National General Corp., supra, 13 Cal.3d at pp. 53-54, 118 Cal.Rptr. 184, 529 P.2d 608; Lucchesi v. Giannini & Uniack (1984) 158 Cal. App.3d 777, 788, 205 Cal.Rptr. 62 [probable cause may be established when defendants prove they consulted a lawyer in good faith, stated all the facts to him, were advised by the lawyer they had a good cause of action and honestly acted upon the lawyer's advice].)
The Tendlers have engaged in a substantial amount of unsuccessful litigation relating to Wiz's public offering and subsequent securities matters, including lawsuits against Strasbourger and Coopers *35 that were subsequently dismissed or adjudged to be without merit, and culminating in a judgment against the Tendlers on stock manipulation charges. (See note 2 ante.) Nonetheless, the circumstances surrounding the disqualification motion and the malpractice suit against Stroock are devoid of any indication that the Tendlers, in defending against the Strasbourger suit, acted otherwise than in good faith on the advice of counsel.
Stroock argues the Tendlers failed to establish any of the elements required for an advice of counsel defense. We address the arguments in turn.

a. The evidence does not permit an inference of bad faith by the Tendlers.
Stroock's fundamental argument is the Tendlers did not consult counsel in good faith. The argument is based on the proposition that, contrary to their declarations, the Tendlers did not actually believe an attorney-client relationship ever existed between Wiz and Stroock, and therefore acted in bad faith. However, Stroock fails to cite any evidence supporting this claim.[21] Moreover, the argument also founders on the legal principle that the existence of an attorney-client relationship, where the facts are undisputed, is a question of law. (Responsible Citizens v. Superior Court. (1993) 16 Cal.App.4th 1717, 1733, 20 Cal.Rptr.2d 756.) The Tendlers made no false factual allegations about the Wiz/Stroock relationship, and as laypersons they cannot be charged with knowledge of the legal conclusion that necessarily flows from those facts.
Stroock contends we may infer the Tendlers never believed Stroock represented them. Stroock argues no written record of the Tendlers' belief that Stroock represented Wiz appears until after Rosen's August 26, 1996 letter to Mar-Jeanne Tendler discussing conflict of interest and disqualification theories. Further, Stroock points to the same evidence that persuaded the Strasbourger court of appeal that Wiz could not reasonably believe Stroock represented Wizthe underwriting agreement naming Stroock as Strasbourger's attorney, and custom in the securities industry. Stroock also cites Wiz's disqualification of Stroock on the eve of trial and other actions by or advice from Wiz's lawyers.[22] This evidence fails to permit an inference of bad faith on the part of the Tendlers.
First, bad faith cannot be inferred simply because the Tendlers did not assert their belief in writing prior to Kronemyer's August 26 letter to Mar-Jeanne Tendler. An inference of bad faith cannot be based solely on the absence of evidence.
Second, Stroock argues we can infer the Tendlers did not believe in good faith an attorney-client relationship existed between Wiz and Stroock, because of *36 Strasbourger's conclusion that "[t]he usual industry practice coupled with the underwriting agreement precluded Wiz from reasonably believing ... Stroock represented it in the registration work." (69 Cal.App.4th at pp. 1407-1408, 82 Cal. Rptr.2d 326.) We disagree, because Strasbourger's conclusion Wiz; could not reasonably believe Stroock represented it in the registration work is not equivalent to a conclusion the Tendlers did not in good faith believe Stroock represented Wiz in the registration work. The difference is that Wiz is a corporation represented by an experienced securities lawyer, Hand. The Tendlers, by contrast, are individuals taking their company public for the first time, who are entitled to rely on the company's securities lawyer for advice.[23] Indeed, when we view the facts from a non-lawyer's perspective, it is not difficult to see how a layperson could believe in good faith that Stroock was providing legal services to Wiz.
While the Tendlers were directors and officers of Wiz, they began the company as a home-based operation, never attended college and had never been involved in a public offering.[24] They were advised by the corporation's lawyer, Hand, that Stroock was representing Wiz with respect to blue sky and related matters.[25] Stroock's attorneys called and talked directly to the Tendlers or other Wiz officers concerning blue sky and NASD matters, and asked the Tendlers questions or asked for information, which the Tendlers or someone else at Wiz would then provide. Stroock billed Wiz for those legal services, most of which occurred before the underwriting agreement was signed. Under these circumstances, it is not difficult to see how a layperson could believe in good faith that Stroock was representing Wiz especially when Hand, Wiz's experienced securities counsel, told them so.
In short, as laypersons, the Tendlers, unlike Wiz's lawyers, cannot be charged with knowledge of a legal conclusionthe lack of an attorney-client relationship that resulted from "usual industry practice coupled with the underwriting agreement ...." (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at pp. 1407-1408, 82 Cal. Rptr.2d 326.) Wiz's attorneysboth Hand at the time of the IPO and Rosen during the Strasbourger litigationwere experienced in the securities industry and fully apprised of the facts, and should have known they could not tenably claim Stroock represented Wiz. The Tendlers, *37 however, cannot be charged with knowledge their lawyers were wrong, at least in the absence of evidence they knew the lawyers were taking a legally insupportable position. No such evidence has been produced.
Third, the fact that Wiz sought Stroock's disqualification "on the eve of trial" suggests nothing about the Tendlers' mental state when they later authorized the malpractice action. On the contrary, the disqualification motion was granted, lending credence to their claim from a layperson's point of view.

b. The Tendlers did not withhold facts or provide false information to Wiz's counsel, who already knew the pertinent facts.
To avoid liability for malicious prosecution based on reliance on the advice of counsel, a defendant must ordinarily show that he fully disclosed all relevant facts to his counsel. Thus, a client cannot withhold facts or misstate facts to his lawyer and then purport to rely on the lawyer's advice.
Stroock argues that the Tendlers have not complied with this requirement because the record is silent about the information the Tendlers actually gave their counsel. Specifically, Stroock complains "there is no record of precisely what the Tendlers may or may not have disclosed regarding their own stock manipulations that were the subject of the successful SEC inquiry...." The argument is specious. Any subsequent stock manipulations have nothing to do with the question whether Stroock represented Wiz in the company's 199t initial public offering. As for disclosure of facts relevant to the representation question, a malicious prosecution defendant is not required to prove he disclosed the facts if the facts are otherwise known to his lawyers. (Graham v. Griffin (1944) 66 Cal.App.2d 116, 122, 151 P.2d 879 [defendants could not rely on defense of advice of counsel if they failed to disclose facts "unless the evidence revealed that such information was acquired by their ... attorney ... through some other source ..."].)
In this case, Wiz's counsel already knew the facts pertinent to Stroock's alleged representation of Wiz.[26] Indeed, the facts relating to Stroock's purported representation of Wiz were never in dispute. It is only the legal effect flowing from those facts that was at issue. The Tendlers were entitled to rely on their counsel's analysis of whether those facts established an attorney-client relationship, so long as they did not withhold pertinent facts or provide false information. Stroock points to no evidence they did so.[27]

c. The contention that Rosen did not advise the Tendlers they had a valid cause of action is without merit.
Finally, Stroock argues the Tendlers were not actually advised by counsel that they had a valid cause of action. Stroock points to Kronemyer's letter *38 recommending Wiz seek a tolling agreement. In that letter, Kronemyer told Arthur Tendler that if the court of appeal were to determine Stroock never was Wiz's attorney, it would not be possible for Wiz to assert a malpractice claim. Stroock argues a jury could inferfrom this statement and from Arthur Tendler's earlier declaration that Stroock represented Wiz in connection with blue sky issuesthat Kronemyer's advice was actually that the success of a malpractice claim hinged on whether the Tendlers got away with "what [they] knew was a false allegation." Stroock is mistaken, because it again confuses an erroneous legal conclusion that Stroock represented Wizwith "false declarations," of which there were none.[28]
In sum, while the Rosen firm may be faulted for bringing an action based on a theory it knew or should have known was groundless, no evidence supports the claims the Tendlers failed to disclose all the facts, made false factual allegations, or otherwise acted in bad faith in following the firm's advice. Accordingly, summary judgment in their favor was appropriate.

DISPOSITION
The judgment entered in favor of the Tendlers is affirmed. The order granting Rosen's special motion to strike is reversed, and the trial court is directed to vacate its order and enter an order denying the motion. The Tendlers are to recover their costs on appeal, and Stroock is to recover from Rosen the costs attributable to its appeal of the order granting the special motion to strike.
We concur: COOPER, P.J., and RUBIN, J.
NOTES
[1] At the beginning of the hearing, the court said:

"... I have read through all this. It is a little hard to follow, some of this you have to understand all that has gone on in terms of that stock offering, who represented who, and what the nature of that representation was. If we're to concentrate on perception ofI don't want to say impropriety, that there might be a conflict.
"The theory, the public ought to be able to look at these lawsuits and say there couldn't be any conflict here. Then there is this about it, the plaintiffsno, the attorney firm, the attorneys were involved in different parts of this whole thing in the past, in such a way that it seems like perhaps they did represent Wiz. They claim that they didn't, that they actually represented in the initial offering, they represented these plaintiffs and the Wiz had their own attorney, Hand & Hand.... [¶] And yet, it seems like the moving party does have billing reports. Well, we know that in the agreement Wiz had to pay for services of the responding party, the attorney, the firm, it is indicated that is just kind of the way these things are done. That doesn't amount to representation. That is just how to shift the fees around.
"So, I tell you, my inclination, I have a tendency to grant this motion. Again, it is kind of the appearance of impropriety. I don't like to use that word `impropriety' because it sounds like somebody is doing something wrong. It is not that. But just all these interwoven relationships are such that Wiz could legitimately be concerned that somehow the attorneys who had represented Wiz in the past, it seems like, would have some kind of conflict, may very well have information they gained through that representation, or worse, that could be used against Wiz in some way or another.
"To really understand it, you almost be tempted to point some kind of special master or something who is an attorney/stockbroker or something that could really put together all this, and spend more time than the fast-track trial court's have, in kind of analyzing what all these relationships really were. But, nonetheless, that is the appearance of it."
The court then heard the parties' arguments and took the disqualification question under submission.
[2] The following day, Wiz filed the first of a number of other legal actions by and against the company and/or the Tendlers:

 On January 9, 1997, Wiz filed a federal lawsuit against the Strasbourger firm and others, alleging Strasbourger traded Wiz securities while in possession of material non-public information obtained by virtue of the relationships among Strasbourger, Stroock, Coopers and Wiz (Wiz Technology, Inc. v. Strasbourger Pearson Tulcin Wolff Inc., Case No. SACV-97-19 LHM). This action was stayed by the federal court pending a ruling by the court of appeal on the disqualification order.
 On March 4, 1997, a securities class action was filed against Wiz and the Tendlers (Glasser v. Wiz Technology, Inc., Case No. 776081).
 On January 29, 1998, Wiz filed a petition for Chapter 11 bankruptcy.
 On September 27, 1999, the Securities and Exchange Commission (SEC) filed an action for federal securities violations against the Tendlers (SEC v. Tendler, SACV 99-1200 DOC). The SEC alleged the Tendlers used accounting gimmicks, sham sales and backdated agreements artificially to inflate sales, income and assets in quarterly reports and press releases issued in 1995, 1996 and 1997. In July 2001, the SEC announced the Tendlers consented to entry of judgment against them. The judgment prohibits them from engaging in securities fraud in the future and from acting as directors or officers of any public company, and requires them to pay $25,000 in disgorgement. (S.E.C. Litigation Release No. 17,058, 2001 WL 753851 (July 3, 2001)). On August 14, 2001, the court of appeal (Division Four) granted Stroock's request for judicial notice of entry of the judgment against the Tendlers as evidenced by the SEC's litigation release. In October 1999, Wiz sued Coopers & Lybrand, claiming damages caused by Coopers' resignation as its auditors, breach of contract, fraud and misrepresentation (Case No. BC195241). On May 14, 2001, the court granted summary judgment for Coopers.
[3] On February 7, 1997, the court of appeal stayed trial court proceedings in Strasbourger pending further order of the court.
[4] Wiz cited a case (In re Complex Asbestos Litigation (1991) 232 Cal.App.3d 572, 580-585, 599, 283 Cal.Rptr. 732) in which the court of appeal upheld the disqualification of a law firm that hired a paralegal who had obtained attorney-client confidential information when he worked for the opposing party's lawyers. Wiz pointed out the disqualified firm never had an attorney-client relationship with the opposing party, and argued for the same result in its case. (Strasbourger, supra, 69 Cal.App.4th at p. 1409, 82 Cal.Rptr.2d 326.) The court of appeal stated the rule of disqualification was "clearly limited to cases where employees or agents of attorneys go to work for opposing counsel and bring confidential attorney-client information with them." In Wiz's case, any information Stroock obtained came from its client, Coopers, and "[a]s such, it could not form the basis for disqualification." (Id. at pp. 1410-1411, 82 Cal.Rptr.2d 326.)
[5] A signed order was filed on February 21, 2001, and notice of its entry was served on May 15, 2001. The order stated that Stroock "has not demonstrated that no reasonable attorney would have considered the cause of action ... tenable." The court found "a valid issue existed with regard to Stroock's relationship to Wiz. The disqualification order, the statute of limitations and tolling agreement issues, the fact that Rosen filed the negligence complaint to preserve its right to bring such action but did not serve that complaint, all are factors supporting a conclusion that the Wiz v. Stroock negligence complaint was filed with probable cause."
[6] The other grounds were (a) the underlying malpractice action was prosecuted by Wiz, not by the Tendlers as individuals; (b) probable cause for filing the complaint was conclusively established by the disqualification order; (c) the malpractice suit was filed to preserve the claim but the complaint was never served and therefore never "prosecuted"; and (d) Stroock's suit was barred by unclean hands, because Stroock refused to toll the statute of limitations and voluntarily answered a complaint that had not been served.
[7] In Shekhter v. Financial Indemnity Co. (2001) 89 Cal.App.4th 141, 152, 106 Cal. Rptr.2d 843, the court observed that under the statute, only the person whose exercise of free expression or petition rights resulted in being sued may bring the special motion to strike. In Shekhter, the court did not address the issue whether a special motion to strike may be brought by lawyers based on the exercise of the right to petition as counsel, and Stroock does not raise the question here. However, the point was recently decided affirmatively in Jarrow Formulas, Inc. v. LaMarche, supra, 97 Cal.App.4th 1, 19-21, 118 Cal.Rptr.2d 388 [special motion to strike available to a lawyer/defendant in malicious prosecution action arising from lawyer's conduct as an advocate while speaking and writing on behalf of his client].
[8] See note 2, ante.
[9] Crowley specifically rejected the argument that a malicious prosecution action cannot be maintained, despite the assertion of invalid theories of liability, when the cause of action is brought with probable cause. (Crowley v. Katleman, supra, 8 Cal.4th at p. 683 n. 11, 34 Cal.Rptr.2d 386, 881 P.2d 1083.)
[10] This consisted of declarations from the Tendlers and Jehu Hand, Wiz's counsel, and included Hand's "understanding" that Stroock was directly representing Wiz with respect to blue sky securities registrations and matters involving the NASD, the American Stock Exchange and the SEC, and Hand's instruction to Wiz to speak directly with Stroock and provide Stroock with whatever information it requested, even if confidential and proprietary. The Strasbourger court of appeal pointed out a number of reasons why Wiz could not reasonably have believed either that Wiz was responsible for blue sky compliance or that Stroock represented Wiz in that work or the due diligence work. These reasons included industry practice, the terms of the underwriting agreement itself, and the fact that only the underwriternot the stock issuer, Wizhas a defense to liability for material misstatements in the registration statement based on performance of a reasonable investigation. (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at p. 1408, 82 Cal.Rptr.2d 326.)
[11] At oral argument, Rosen's counsel suggested we may infer from a Stroock letter to Rosen on August 30, 1996, that Stroock itself then believed it had represented Wiz in the blue sky work. In that letter, a Stroock lawyer pointed out to Rosen that prior representation only operates as a disqualification if it is substantially related to the current representation, and did not specifically deny prior representation of Wiz. That letter, however, was the fourth in a series that began on August 28, 1996, with a letter from Rosen to Stroock demanding Stroock's withdrawal from the Strasbourger litigation based on Stroock's vicarious representation of Wiz through Coopers and on its actual prior representation of Wiz. Stroock immediately replied by letter stating the assertions in Rosen's letter were "both factually and legally inaccurate" and Stroock had no intention of responding further. Rosen wrote again on August 30, 1996, describing Stroock's position as "incredible, particularly in light of the invoice we forwarded showing the extent of Stroock's prior representation of Wiz." Stroock then responded with the August 30 letter referring to "the issue" of Stroock's previous representation of Wiz. Viewed in its entirety, this correspondence does not permit a reasonable person to infer that Stroock was conceding prior representation of Wiz in its August 30 letter.
[12] The trial court in this case cited several other factors to support probable cause, in addition to the Strasbourger trial court's disqualification order. The approaching expiration of the statute of limitations and Stroock's refusal to agree to toll the statute have no bearing on whether the underlying claim is legally tenable. (Moreover, Rosen asked Stroock to toll the limitations period for one month, not indefinitely pending a decision by the court of appeal.) Nor do the facts that Wiz did not serve the complaint, or that Stroock voluntarily answered it, have any bearing on legal tenability. Wiz's withholding service might conceivably bear on the issue of malice, but not on probable cause. Likewise, the answer to a complaint, voluntary or not, is unrelated to the legal tenability of the complaint that precipitated it.
[13] A claim for disqualification based on access to confidential information may have been tenable, even in the absence of an attorney-client relationship between Stroock and Wiz. The Tendlers presented the case for that position in expert declarations supporting their summary judgment motion. The experts cited cases finding a disqualifying conflict of interest when an attorney acquires confidential information from a non-client which is material to the attorney's representation of a client in an action against the non-client. (See William H. Raley Co., Inc. v. Superior Court (1983) 149 Cal.App.3d 1042, 1049, 197 Cal.Rptr. 232; Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft (1999) 69 Cal.App.4th 223, 232-233, 81 Cal.Rptr.2d 425.)
[14] The court of appeal discussed the contention Stroock had a duty to Wiz independent of any prior attorney-client relationship, and the cases asserted to support it, and rejected that basis for disqualification as well. (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at pp. 1409-1411, 82 Cal.Rptr.2d 326.)
[15] The question whether Stroock represented Wiz is not a legal principle for which there is any existing authority or which brings into play "the leeway a litigant must be given to argue for an evolution of legal precedents. ...." (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.)
[16] As the court said in Bertero v. National General Corp., supra, 13 Cal.3d at p. 57, 118 Cal.Rptr. 184, 529 P.2d 608, "We see no reason for permitting plaintiffs .... to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless."
[17] Kronemyer's synopsis of the facts for Markle makes it clear Rosen's primary concern was Stroock's dual representation of Strasbourger and Coopers. He believed Coopers "should and must" communicate to Stroock confidences previously disclosed to Coopers by Wiz, and Stroock in turn could disseminate that confidential information to Wiz's adversary in the Strasbourger litigation.
[18] In a letter to Stroock two days later, Kronemyer took the position that Stroock vicariously represented Wiz through its representation of Coopers, andcontrary to his statements to Markle and Tendlerthat Stroock represented Wiz in connection with blue sky matters. Similarly, the statement of facts dated September 18, 1996, provided to Wiz's experts in connection with the disqualification motion, stated that Stroock had previously represented Wiz; the declarations of Wiz's experts, submitted to the Strasbourger trial court to support the disqualification motion, both assumed such representation as a fact.
[19] The malice required in an action for malicious prosecution is not limited to actual hostility or ill will, but exists when the proceedings are instituted primarily for an improper purpose, including circumstances in which the person initiating the proceedings does not believe his claim may be held valid. (Albertson v. Raboff (1956) 46 Cal.2d 375, 383, 295 P.2d 405.)
[20] The Rosen firm had considerable experience in the securities industry and was therefore presumably conversant both with normal practices in stock offerings and with the express terms of the underwriting agreement, under which Stroock represented Strasbourger, not Wiz. Robert Rosen has practiced securities law since 1973; Kronemyer has practiced law since 1976 and at all times worked under the direction of Rosen.
[21] The only citations to evidence in this segment of Stroock's brief are to two letters generated by the Rosen firm, and to a letter from Arthur Tendler stating that Stroock's reaction to Rosen's proposed tolling agreement "should be quite interesting." Stroock incorrectly characterizes Tendler's letter as referring to the malpractice suit rather than the tolling agreement.
[22] Stroock cites (a) a demand from Wiz's lawyer, after disqualification was granted, that Stroock turn over the work product Stroock generated in its blue sky work in connection with the Wiz public offering, and (b) Kronemyer's letter telling the Tendlers the malpractice lawsuit would be prosecuted as one component of Wiz's overall strategy against the Strasbourger plaintiffs. We cannot see how these actions by Wiz's lawyers reflect bad faith by the Tendlers, or knowledge on the part of the Tendlers that there was no legal basis for claiming Stroock represented Wiz.
[23] Strasbourger observed that "[a] savvy company involved in a stock offering would not consider the underwriter's counsel to be its attorney simply because it performed blue sky work for the transaction," and expressly noted that Wiz's counsel, Jehu Hand, had "considerable background and expertise in securities law matters." (Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc., supra, 69 Cal.App.4th at p. 1405 & fn. 2, 82 Cal.Rptr.2d 326.)
[24] The Tendlers' statement of undisputed facts indicates that both Arthur and Mar-Jeanne were never before involved in a public offering; Mar-Jeanne's declaration, however, is silent on the point. Stroock does not contradict the point, but argues it is not material.
[25] Hand's declaration states that, in connection with Wiz's IPO in 1994, "I advised Wiz, specifically Art Tendler, Wiz's president and Mar-Jeanne Tendler, Wiz's CEO, that Stroock was representing them with respect to such matters [blue sky state securities registrations and matters involving NASD, the American Stock Exchange and the SEC] and that they should provide Stroock with whatever information Stroock requested and to talk directly with Stroock to accomplish the completion of the Offering, even if it meant providing Stroock with confidential and proprietary information."
[26] Stroock also argues Rosen knew, and told the Tendlers, that Stroock did not represent Wiz. But the only evidence on that point is Kronemyer's letter to Mar-Jeanne Tendler, which includes the statement that "[b]ecause Wiz never actually was Perlis' client, the law is ambiguous." That is an ambiguous statement from a layperson's point of view, since Perlis did not perform the blue sky work.
[27] Stroock is also offended by the Tendlers' reference to the expert opinions obtained by Rosen in support of the disqualification motion, observing that Rosen instructed the experts to assume that Stroock had represented Wiz. This may reflect adversely on Rosen, but it is difficult to see how it is "actually evidence of ... the Tendlers' bad faith."
[28] Stroock makes two other arguments. One is that the trial court erroneously based its rulings on expert opinions proffered by the Tendlers on probable cause, when it is well-established that expert testimony on the legal issue of probable cause is improper. Assuming the expert declarations were addressed to the issue of probable cause, which the Tendlers dispute, the argument is irrelevant, as the trial court's grant of summary judgment was explicitly based solely on the Tendlers' affirmative defense of reliance on the advice of counsel. Stroock also contends the trial court should have granted Stroock's request for a continuance to allow additional discovery, particularly depositions, under Code of Civil Procedure section 437c, subdivision (h), even though "considerable written discovery" had already been conducted. As of the date of the summary judgment hearing on November 21, 2000, Stroock had noticed no depositions, even during an unrelated six-week postponement of the hearing. We see no error in the trial court's denial of Stroock's request.